480 So.2d 1341 (1985)
Deborah Magic GREY, Appellant,
v.
EASTERN AIRLINES, INC., and Travelers Insurance Company, Appellees.
No. BE-381.
District Court of Appeal of Florida, First District.
December 5, 1985.
Rehearing Denied January 28, 1986.
*1342 W. Bradley Munroe of Welch and Munroe, P.A., Tallahassee, for appellant.
Thomas J. Maida of Karl, McConnaughhay, Roland & Maida, P.A., Tallahassee, for appellees.
NIMMONS, Judge.
Claimant appeals from an order denying temporary total disability, denying payment of a chiropractor's bill and continuing chiropractic treatment, and omitting any provision for payment of claimant's travel expenses incurred in connection with claimant's medical treatment. We reverse except as to the denial regarding the chiropractor's bill and continuing chiropractic treatment, which we affirm.
The claimant, a flight attendant for Eastern Airlines, Inc., sustained a back injury in a compensable accident on October 13, 1981. After initial medical treatment, she was referred to Dr. Hutchinson, a Tallahassee orthopedist, on December 4, 1981. He prescribed bed rest and flexion. Before referring her to a neurologist in April 1982, Dr. Hutchinson saw claimant several times. During that time, she was fitted with a back support, treated for pain with injections of hydrocortisone, and prescribed physical therapy in the form of heat, exercise, and electrical stimulation. Between February 17 and April 15, 1982, claimant received 22 physical therapy treatments.
Claimant was referred on April 26, 1982 to Dr. Martin, a neurologist. In May, Dr. Martin advised Dr. Hutchinson that his examination of the claimant indicated that she "... most likely has a lumbosacral strain" and that "... because of the total disruption in her life and the fact that she's unable to return to work, I feel that we should proceed with a myelogram ..." He also recommended an electromyogram (EMG) requiring hospitalization.
The claimant received her regular salary payments until February 15, 1982 after which no further payments were made and no compensation payments were made.
In August, 1982, an initial hearing was held on claimant's claim for, among other things, temporary total disability benefits since February 16, 1982. The question of the claimant's entitlement to TTD was not resolved after that hearing because, as the deputy stated in an order entered September 10, 1982, he felt that the evidence was insufficient to determine whether the claimant was TTD. Although the deputy's September 10 order expressly acknowledged the testimony of Dr. Perkins, a chiropractor, to the effect that the claimant was still TTD when he examined the claimant on August 11, 1982, the deputy's September 10 order postponed determination of TTD pending evaluation by a neurologist to be provided by the employer/carrier.
Subsequent to the September 10, 1982 order, Dr. Martin, the above-referred neurologist who had previously seen the claimant, had an EMG and a CAT scan of the lumbar spine done, results of which were negative. The claimant continued to be seen by Dr. Martin as she had been unable to obtain relief from the pain in her back and left leg. In June 1983, Dr. Martin ordered a thermogram[1] by Dr. Rein, the results of which indicated an organic nerve fiber involvement and/or substantial soft tissue injury. Dr. Martin suspected a pinched nerve at L5. The claimant continued to experience painful symptoms and, in November 1983, the claimant submitted to a myelogram on the recommendation of Dr. Martin. The myelogram was essentially normal.
In April 1984, Dr. Martin referred her to Dr. Green for another thermography which, this time, revealed no abnormality. The claimant was also referred for a test designed to quantify muscle strength in the lower extremities. The test, although largely subjective, indicated that the claimant was about half as strong in the left leg as she was in the other leg. That test, along with the results of an MMPI (Minnesota Multiphasic Personality Inventory), were corroborative of claimant's complaints, *1343 according to Dr. Martin. He continued to prescribe pain medication.
The claimant, on her own, had another thermogram done, this time by Dr. Trotman, a chiroprator. He reported an abnormal thermogram and indicated that it was consistent with the claimant's complaints and a left L5 nerve irritation.
Throughout the above course of treatment and evaluation of claimant, she was never informed that she was released to return to work. The first time that any of her doctors so indicated was when Dr. Martin's deposition was taken an September 20, 1984 prior to the final hearing on December 7, 1984.[2] At his deposition, Dr. Martin testified that, although he was of the view that the claimant should not return to work as a stewardess or other work involving bending, stooping or lifting over five to ten pounds, he felt that she would be able to engage in sedentary work such as office or clerical work. He also opined that the claimant had reached MMI on December 15, 1983 after her myelogram, although the claimant had not previously been told that she had reached MMI. Dr. Martin also testified that he had recommended bed rest for the muscle spasm in the lumbosacral area and that she "had periods of fairly prolonged rest in conservative treatment with no persistent improvement."
The deputy, in the appealed order entered in January 1985, found that the claimant was not TTD after February 16, 1982, that she had reached MMI on December 15, 1983, that she had made no work search and that she was not entitled to compensation benefits. Even though there is sufficient medical evidence to support a finding that the claimant was not totally disabled after February 16, 1982, the claimant, nevertheless, could have qualified for TTD benefits had she conducted a sufficient good faith work search without success. Cf. Hirschensohn v. Personnel, 455 So.2d 537 (Fla. 1st DCA 1984). And, although she did not search for work during the time in question, under the line of cases exemplified by Fulmer-Orlando v. Taylor, 419 So.2d 734 (Fla. 1st DCA 1982), she cannot be saddled with the consequences of her failure to search for work if the evidence shows that she neither knew nor should have known that she was medically released to work. See Hirschensohn v. Personnel, supra at 539.
Such is the case sub judice. According to his testimony, when Dr. Hutchinson initially saw the claimant in December, 1981, he ordered "complete bed rest for a week to see if her symptoms would subside." When he next saw her ten days later, he found it necessary to prescribe a back brace. He continued to see her because of her symptoms which included the development of pain down her left leg. After Dr. Hutchinson's initial instruction of complete bed rest to see if claimant's symptoms would subside, there is no testimony in the record that Dr. Hutchinson or any other doctor informed her that she was released to work. Dr. Hutchinson last saw the claimant in April 1982 when he referred her to Dr. Martin, the neurologist.
Moreover, it cannot fairly be said, on the facts of this case, that the claimant should have known that she was medically released to work until Dr. Martin's above-referred deposition taken on September 20, 1984, at which time he stated that she was medically capable of light sedentary work.[3] *1344 Compare Lakeland Construction Company v. Flatt, 433 So.2d 1253 (Fla. 1st DCA 1983) (until date of hearing before the deputy, none of Flatt's doctors or anyone else told him that he was medically able to work; however, court held he should have known as of the date of hearing that he was able to do some work).
For the foregoing reasons, we reverse the order insofar as it denies TTD benefits from February 16, 1982 through September 20, 1984 and remand for the entry of an award of such benefits for that period. Also, the employer/carrier has conceded on appeal that the deputy, apparently inadvertently, omitted from the order an award to claimant for her travel and expenses associated with her medical treatment, and that the claimant is entitled to such benefits. On remand, an award shall be made therefor. We affirm the order in all other respects as we have examined the other points raised by appellant and find them to be without merit.
AFFIRMED in part and REVERSED in part and REMANDED with directions.
BOOTH, C.J., and ZEHMER, J., concur.
NOTES
[1] No issue has been raised, either in the proceedings below or on appeal, concerning the admissibility of thermography evidence. For recent appellate treatment of thermography evidence, see Crawford v. Shivashankar, No. BD-8 (Fla. 1st DCA Aug. 22, 1985); Fay v. Mincey, 454 So.2d 587 (Fla. 2nd DCA 1984).
[2] In September 1984, counsel for the employer/carrier applied for a final hearing.
[3] We note that Dr. Hutchinson's deposition was taken shortly after the initial August 12, 1982 hearing. His testimony was so equivocal on the question of whether the claimant was capable of returning to work that it cannot be viewed as the kind of medical release that would avoid the Fulmer-Orlando result. For example:

Q. Had she advised you that she wanted to return to work, would you have instructed her not to do that?
* * * * * *
A. I would not have instructed her not to go back to work."
Moreover, even though a doctor's deposition testimony may, as in the instance of Dr. Martin's September 1984 deposition, be equivalent to notice to the claimant that he is medically released to work, any such expression by Dr. Hutchinson in an August 1982 deposition four months after he had referred the claimant to another physician (Dr. Martin) would be of little significance on this issue.