PER CURIAM.
Claimant appeals the denial of temporary total disability (TTD) benefits for the period of October 27,1983, to January 27,1984. We reverse because the record indicates claimant was not informed that she was released to work and was required to attempt employment while awaiting amputation of her injured fingers, which her surgeon had postponed pending termination of her pregnancy.
The deputy was of the view that the prehearing stipulation, in which counsel stipulated that the claimant’s doctor released her to return to limited work on September 29, 1983, precluded her from asserting that her doctor never communicated such release to her, an assertion which she articulated at her deposition as well as at the hearing before the deputy. The doctor did not testify that he ever informed her that she could return to work. We conclude that the stipulation may not be construed as foreclosing the issue of whether the claimant was informed that she could return to work, particularly in view of the fact that her injury was still symptomatic and disabling. Benefits are not properly denied for failure to seek work in the absence of evidence that claimant was informed or should have known of the release for that purpose. Fulmer-Orlando v. Taylor, 419 So.2d 734 (Fla. 1st DCA 1982); Lakeland Construction Co. v. Flatt, 433 So.2d 1253 (Fla. 1st DCA 1983).
The employer/carrier asserts that even if the claimant was not informed by the doctor that she was released to work, she should have known that she had been so released by November 11, 1983, when the employer/carrier’s placement specialist consulted with her. We disagree with the conclusion that the vocational placement specialist communicated to claimant on November 11, 1983, the fact of her release for, and obligation to attempt, a return to work. That expert witness’ testimony es *288 tablishes, instead, that “I felt it was inappropriate to have her out on a job search, trying to attain employment that she would very soon be in need of leaving to undergo the delivery ... and then ultimately the surgery that she was being scheduled for after the delivery_” (e.s.) The witness testified to a subjective primacy of the pregnancy factor in her own mind, without any reference to communication of that priority concern to claimant. The interview, so far as shown by the record, left claimant to await the resolution of the impending surgery as well as delivery based on the “bilateral determination ... between the client and [the vocational placement] organization” that job search was inappropriate until the surgery could be done.
In addition, the circumstances in this case are such that it would have been a futile gesture for the claimant to have attempted to find employment commencing on November 11, 1984, for a period which would have been necessarily interrupted by imminently impending childbirth and surgery for her industrial injury scheduled immediately thereafter. Her accident caused severe injuries to her left hand. Amputation of portions of her third and fourth fingers was necessarily deferred by her doctors until after the delivery of her baby. She was a 23-year-old Haitian emigre who spoke little English and whose only work experience was as a machine operator sewing zippers into handbags, work which required the use of both hands. The futility of a job search by a person in the claimant’s condition on November 11, 1983 is apparent. To say the least, it would indeed be a beneficent prospective employer who would undertake to employ a one-armed, unskilled, creole speaking, seven-month pregnant woman whose hand was to be partially amputated after the delivery of her baby six or seven weeks hence. A work search during that period should have been excused. See Sizemore v. Canaveral Port Authority, 332 So.2d 23 (Fla.1976); Fairchild Industries Inc. v. Sievers, 447 So.2d 393 (Fla. 1st DCA 1984).
We also find no evidence of the duration of claimant’s hospitalization, if any, beyond the date of birth of her child, and would not in any event find such evidence to preclude compensation in the circumstances here, i.e., where the unrelated hospitalization occurs during the continuity of otherwise compensable temporary disability-[1]
We reverse and remand for an award of TTD covering the controverted period from October 27, 1983, to January 27, 1984.
WENTWORTH and ZEHMER, JJ., concur.
NIMMONS, J., concurs in part and dissents in part with written opinion.

. Cf. the opinion in Hewitt & Associates of Florida, Inc. v. McKimie, 416 So.2d 1230 (Fla. 1st DCA 1982), which appears to negate entitlement by a statement broader than required by the context of the order there reversed, and without reference to pertinent proximate cause standards. Where, as in Hewitt, hospitalization for non-industrial causes occurs while a claimant’s industrial injury or need for treatment does not prevent employment, then of course the opinion correctly concludes "claimant would not be entitled to temporary disability benefits during the time she was in the hospital for a condition unrelated to her industrial injury.” That does not mean that unrelated hospitalization requires suspension of benefits when the compensable injury or its sequelae are simultaneously disabling. The complication in the present case is that the necessary surgery delayed employability and the pregnancy (discovered during initial treatment) delayed the compensable surgery. But the industrial injury, i.e., the inability to complete surgical repairs through circumstances beyond claimant’s control, clearly remained a significant factor in claimant’s work limitations until the surgery was accomplished or until she was apprised of facts reasonably requiring work search pending surgery. Nothing in the record indicates such notice would have been futile; claimant in fact testified her past pregnancies had not interrupted employment.