SMITH, Judge.
Suncrete Corporation and Southeastern Fire Insurance Company (E/C) appeal a final order of the deputy commissioner which awarded appellee Vincent J. Scho-field (claimant) temporary total disability benefits, and which found claimant permanently impaired as the result of an industrial accident. The E/C contend that the deputy erred in both of these rulings. We affirm in part, reverse in part, and remand for further proceedings.
Claimant, employed by Suncrete as a concrete finisher, was injured on June 15, 1983, during the course and scope of his employment when he fell from a ten-foot high ladder, striking the concrete floor on his elbows and knees. Medical examination revealed an osteochondral fracture of the distal femur bone of his left knee, a condition for which claimant underwent arthroscopic surgery in July, 1983. Claimant was placed on a postoperative physical therapy program consisting of quadriceps exercises by Dr. Martin Freed, his treating physician. In January, 1984, Dr. Freed advised claimant to begin swimming and light jogging exercises, but cautioned claimant to discontinue all physical therapy if his injured left knee began to swell or otherwise cause him significant discomfort. Dr. Freed later testified that claimant was capable of returning to light-duty work no earlier than April 4, 1984.
However, claimant subsequently began employment with another firm, Florida Concrete Finishers, in February, 1984. Claimant’s job duties with this company were similar to his duties with Suncrete. Claimant testified that he had received a notice of termination of TTD benefits from the E/C on February 17, 1984 which, he stated, caused him to seek reemployment so as to “make up” the income lost when his workers’ compensation benefits. were discontinued. The E/C admitted terminating claimant’s TTD benefits, but produced for the record below a notice, purportedly sent to claimant on February 23, 1984, recommencing claimant’s benefits and acknowledging that the information upon which it relied in discontinuing claimant’s benefits was erroneous. Claimant admitted receiving this latter notice, although he was unable to recall at his deposition the precise date of this occurrence. Claimant also admitted continuing to work for Florida Concrete Finishers after his TTD benefits were reinstated, although he was unable to recall the time period he was so employed. At the hearing on claimant’s claim for TTD benefits from April 4 and continuing, the E/C introduced payroll records from Florida Concrete Finishers indicating that claimant began work prior to February 24, 1984 and continued to work off and on until May 1,1984. Testimony of both the claimant and the owner of Florida Concrete established that claimant was given light duty, was never able to work a full week, and could work only intermittently.
Although Dr. Freed testified that he had released claimant to return to light-duty work after April 4, 1984, he was able to recall only one specific date when he so informed claimant of this work release, July 20, 1984, when an entry in Dr. Freed’s medical notes stated that, as of that date, claimant was capable of “returnpng] to some form of activity.” Claimant, on the other hand, testified that his first recollection of being told by Dr. Freed that he was *992 released to return to work was on August 20, 1984. In any event, claimant admitted that he conducted no work search during the time period between his job with Florida Concrete Finishers, May 1,1984 and the date Dr. Freed found claimant to have reached MMI, October 1, 1984.
In the order appealed, the deputy commissioner found claimant temporarily totally disabled from work for the weeks ending March 28, April 20, and April 27, 1984. However, the deputy also found, based upon the payroll records of Florida Concrete Finishers, that claimant had actually worked on the weeks ending February 24, March 8, March 16, March 30, April 6, April 13, and May 1, 1984. Accordingly, the deputy commissioner ordered the E/C to pay claimant TTD benefits from March 18 through March 24, April 15 through April 28, and May 2 through October 1, 1984. The deputy specifically granted the E/C credit against those TTD benefits it paid between February 24 and April 4, 1984, evidently for those weeks claimant actually worked for Florida Concrete Finishing.
Although the E/C strenuously argue that the medical evidence of permanent impairment was too nebulous and imprecise to support the deputy’s finding of permanent impairment, we decline to disturb the deputy’s ruling on this issue. The sole medical witness was Dr. Freed, claimant’s treating physician. As appellee points out in his brief, Dr. Freed was of the opinion, among other things, that a permanent scar, though small, would be present at the fracture site, and that claimant would lose strength in his knee on an intermittent basis due to a tendency not to use his knee when swelling and discomfort occurs, causing a slight degree of atrophy over time.
We agree with the E/C that claimant’s work activities between February 24 and May 1, 1984 precluded him from properly being awarded TTD benefits, during this time period, since such an award is improper during those times a claimant demonstrates a partial ability to work. Valencia Community College v. Elder, 461 So.2d 204 (Fla. 1st DCA 1984); Publix Supermarkets, Inc. v. Simpson, 478 So.2d 844 (Fla. 1st DCA 1985); Southern Bell Telephone and Telegraph Company v. Albritton, 464 So.2d 219 (Fla. 1st DCA 1985). Moreover, claimant likewise became disen-titled to TTD benefits on either July 20 or August 20, 1984 through October 1, 1984, depending upon whether the testimony of Dr. Freed or claimant is credited as to the date claimant was informed he had been medically released to return to work, since claimant admitted he conducted no good faith work search between May 1 and October 1, 1984, Citrus Central, Inc. v. Gardner, 466 So.2d 369 (Fla. 1st DCA 1985).
The order appealed from must therefore be reversed as to TTD benefits awarded for the weeks ending February 24, 1984, and the period from that date until May 1, 1984, when claimant’s employment with Florida Concrete Finishing ceased. However, on remand, the deputy should consider whether claimant was entitled to temporary partial disability benefits during that period. Southern Bell Telephone and Telegraph Company v. Albritton, 464 So.2d 219 (Fla. 1st DCA 1985). The order also is vacated and remanded as to benefits awarded after May 1, 1984 to allow the deputy to make a decision, based on the conflicting evidence, as to the date claimant was informed he was released to return to work. Any TTD benefits claimant received after he was so informed are improperly awarded. However, the deputy commissioner did not err in awarding TTD benefits between May 1 and either July 20 or August 20, 1984. The claimant may not be denied TTD benefits based on his abortive efforts to resume employment while under medical restrictions, since claimant was not informed by Dr. Freed that he was released to return to light work until one of those dates and claimant was thus unaware of the need for conducting a job search after he became unable to continue with his work with Florida Concrete on May 1, 1984. Grey v. Eastern Airlines, Inc., 480 So.2d 1341 (Fla. 1st DCA 1985); Alexandre v. Excel Handbags, Inc., 479 So.2d 286 (Fla. *993 1st DCA 1985); Fulmer-Orlando v. Taylor, 419 So.2d 734 (Fla. 1st DCA 1982).
Contrary to the E/C’s assumption, the order does not award attorney’s fees, but merely reserves jurisdiction to later determine the responsibility for and amount of such fees. The E/C’s challenge on this issue is thus premature. See Sandcaribe, Inc. v. Llerandi, 432 So.2d 185, 187 (Fla. 1st DCA 1983).
Accordingly, the order appealed from is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
Reversed and remanded with directions.
JOANOS and WIGGINTON, JJ„ concur.