362 So.2d 681 (1978)
CITY OF ST. PETERSBURG, Florida, a Municipal Corporation, Harold Mullendore, As Custodian of Evidence for the Grand Jury of Pinellas County, and Harold Mullendore, As Clerk of Court in and for the Sixth Judicial Circuit, Petitioners,
v.
W.R. HOUGHTON, Respondent.
W.R. HOUGHTON, Petitioner,
v.
CITY OF ST. PETERSBURG, Florida, a Municipal Corporation, Harold Mullendore, As Custodian of Evidence for the Grand Jury of Pinellas County, and Harold Mullendore, As Clerk of Court in and for the Sixth Judicial Circuit, Respondents.
Nos. 78-574, 78-748.
District Court of Appeal of Florida, Second District.
August 11, 1978.
Rehearing Denied September 20, 1978.
Michael S. Davis, Chief Asst. City Atty. and Richard Luce, Asst. City Atty., St. Petersburg, Philip W. Dann, St. Petersburg, for W.R. Houghton.
W. Gray Dunlap, County Atty., James A. Helinger, Jr., Chief Asst. County Atty., and Gerald A. Figurski, Asst. County Atty., Clearwater, for Harold Mullendore, as Clerk of Court in and for the Sixth Judicial Circuit.
*682 James T. Russell, State's Atty., D. Lee Fugate and Myron J. Mensch, Asst. State Attys., Clearwater, for Harold Mullendore, as Custodian of Evidence for the Grand Jury of Pinellas County.
RYDER, Judge.
W.R. Houghton, the plaintiff below, filed a civil action against the City of St. Petersburg [City], Harold Mullendore [Mullendore], as Custodian of Evidence for the Grand Jury of Pinellas County, and also as Clerk of Circuit Court in and for the Sixth Judicial Circuit.[1]
The third amended complaint has three counts. Count I, an action in replevin, alleges, inter alia, that $316,380.00 were seized from the custody and control of Houghton by certain law enforcement officers subsequent to a stop of his vehicle and arrest of Houghton on the charge of conspiracy to deliver thirty pounds of hashish. Sometime after his arrest, a "no information" was filed in regards to the charge against Houghton but the Pinellas County Grand Jury recommended forfeiture of the currency seized from Houghton. In August of 1977, the county court of Pinellas County dismissed the forfeiture proceedings on the ground that the seized currency was not subject to forfeiture under the laws of the State of Florida.
Count I further alleges that defendant Mullendore, as Custodian of Evidence for the Grand Jury, presently has custody of a certificate of deposit for the currency which was deposited in a bank; that all of the defendants have refused demand for the return of the currency; and that plaintiff Houghton is entitled to possession of the currency, the source of his right to possession of the money being his exclusive possession of same prior to its allegedly unlawful removal from his possession.
Count II realleges most of Count I and seeks declaratory relief alleging that Houghton has a possessory interest in the currency superior to all defendants who assert adverse interest thereto. However, Count II does not indicate how this possessory interest was obtained.
Count III realleges most of the previous two counts and avers that the officers of the City and the Sheriff deprived him of his constitutional rights in illegally seizing the money and seeks damages. The record is unclear as to whether or not Mullendore is a defendant in this particular count. Also, it should be noted that there has been no determination that the money was, in fact, illegally seized.
On December 19, 1977 Houghton was deposed by defendants. Houghton refused to answer thirty-eight questions on the ground of his Fifth Amendment privilege against self-incrimination.[2]
The City and Mullendore then filed motions to compel Houghton to answer these questions and to abate the cause for a reasonable time therefor; and, alternatively to dismiss the cause in the event Houghton did not respond within a given time period.
Upon hearing on the aforesaid motions, the court entered a four-part amended order on March 27, 1978 which (1) abated Count I (replevin) for sixty days from February 21, 1978 for the plaintiff to submit himself to further discovery; (2) if plaintiff did not submit to discovery or respond satisfactorily within the sixty-day period, Count I shall stand dismissed, without prejudice; (3) defendants' motions for sanctions were denied as to Count II (declaratory relief) and as to Count III (damages) and, further, *683 the defendants were directed to respond thereto; and (4) denied the City's motion to compel and abate in all other respects.
Thereafter, the City answered Counts II and III, denying liability. Mullendore filed motions to dismiss and for a more definite statement. Houghton moved for summary judgment against the City on Count II, but has not submitted to further discovery.
Houghton filed a petition for writ of certiorari (Case 78-748) seeking reversal of paragraphs (1) and (2) of the aforementioned order. The City and Mullendore, in turn, filed petitions for writ of certiorari (Case 78-574) seeking reversal of paragraphs (3) and (4) of the above order. This court consolidated the cases.
The plaintiff claims a right to invoke his Fifth Amendment privilege in the course of discovery in this case, and to refuse to answer questions on deposition. His right to do so is the subject of an A.L.R. Annotation "Dismissing Action or Striking Testimony Where Party to Civil Action Asserts Privilege Against Self-Incrimination as to Pertinent Question," 4 A.L.R.3d 545 et seq.
Houghton urges upon this court the idea that the trial court deviated from the essential requirements of law as to permit this discovery which will cause Houghton material injury for which appeal will be inadequate, citing to us our own case of Leithauser v. Harrison, 168 So.2d 95 (Fla. 2d DCA 1964). Houghton further argues the proposition that a state may not impose substantial economic sanctions on a non-immunized individual because he elects not to waive his Fifth Amendment privilege. Lefkowitz v. Turley, 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1974); U.S. ex rel. Sanney v. Montanye, 500 F.2d 411 (2d Cir.1974), cert. denied, 419 U.S. 1027, 95 S.Ct. 506, 42 L.Ed.2d 302, and Lefkowitz v. Cunningham, 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977).
Although the three federal cases cited above by Houghton relate to one's right to invoke the Fifth Amendment, they are distinguishable from the matter sub judice. Lefkowitz v. Turley, supra, involves architects who were summoned to testify before a New York State Grand Jury investigating various charges of conspiracy, bribery and larceny. This summons was issued pursuant to a New York statute which required public contractors, such as these architects, to testify before a grand jury relative to existing state contracts and if they refused to do so, they would suffer cancellation of their contracts and lose the right to bid on further state jobs. The architects refused to sign waivers of immunity, invoked the Fifth Amendment and, thereafter, challenged the New York State Statute. In U.S. ex rel. Sanney v. Montanye, supra, Sanney was a suspect in a murder and was later charged with manslaughter. In Lefkowitz v. Cunningham, supra, Cunningham, a public official, was subpoenaed before a grand jury for testimony concerning the conduct of his office. This is similar to the first Lefkowitz case cited by the plaintiff herein and the Supreme Court of the United States also ruled similarly. In each of these cases, the appellants were either suspect of murder or of other criminal wrong-doing and in both Lefkowitz cases the appellants who invoked the Fifth Amendment were subpoenaed before a grand jury and appeared involuntarily.
In the case at hand, we see that Houghton is the plaintiff and is not involuntarily involved in litigation but, rather, initiated the suit himself.
Recently, this court has dealt with a defendant's right to invoke the privilege against self-incrimination in a civil action. See Roberts v. Jardine, 358 So.2d 588 (Fla. 2d DCA 1978). However, here we are confronted with the question of the plaintiff's right to invoke the Fifth Amendment privilege in a civil action.
Our attention, thus, is immediately drawn to a series of Florida cases beginning with Stockham v. Stockham, 168 So.2d 320 (Fla. 1964) wherein the Supreme Court of Florida affirmed a decision of this court holding that the wife/plaintiff who refused to respond to defendant's request for admissions must answer, and that upon her failure to do so (on claiming protection against self-incrimination) *684 her suit for divorce would be dismissed. The Florida Supreme Court held that neither the provisions of Section 12 of the Declaration of Rights of the Florida Constitution nor the Fifth Amendment of the Federal Constitution, for protection against self-incrimination were available to the plaintiff in said suit, and if insisted upon, would result in dismissal of that party's suit.
Five years later, in another divorce case, Simkins v. Simkins, 219 So.2d 724 (Fla.3d DCA 1969), plaintiff/husband refused to answer questions in a discovery deposition regarding the charge of adultery which the wife had leveled against him, invoking his constitutional privilege against self-incrimination. An interlocutory appeal was taken, but our sister court, the Third District Court of Appeal, declined to follow the Stockham case.
Thereafter, this court in Minor v. Minor, 232 So.2d 746 (Fla. 2d DCA 1970) again addressed the problem when in a pre-trial deposition of plaintiff/wife she invoked her Fifth Amendment privilege against self-incrimination in response to questions relating to defendant's charges of her adultery. Speaking for the court in a well reasoned opinion, then Judge McNulty observed that Simkins had departed from Stockham on the basis of the Supreme Court of the United States decisions in Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967) and Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). After review of both Garrity and Spevack, Judge McNulty wrote:
"Now concededly, in those cases, the parties invoking the Fifth Amendment were wrongfully penalized for their `taking the Fifth.' They were forced to choose, as it is said, `between Scylla and Charybdis.' But there they were involuntarily thrust into such quandary, while here, the invoking party is voluntarily the moving party affirmatively seeking equity. Appellant's choice in this case is not, involuntarily, one between two totally disadvantageous alternatives, as were the choices in Garrity and Spevack, supra, but rather, voluntarily, one between two alternatives one of which can be employed to some advantage. Appellant can gain the affirmative relief she seeks from her choice, and the choice is freely hers; in Garrity and Spevack on the other hand couldn't gain in any event, yet they were compelled to choose.
We conclude, then, that appellant suffers no `penalty' in the sense spoken of in Spevack, and neither that case nor Garrity, supra, can operate to vitiate the holding of our Supreme Court in Stockham, supra, ..." Page 747.
Upon review by the Florida Supreme Court by writ of certiorari of our decision in Minor, the Florida Supreme Court affirmed Minor and disapproved Simkins. See Minor v. Minor, 240 So.2d 301 (1970).
In Mahne v. Mahne, 124 N.J. Super. 23, 304 A.2d 577 (1973), the court cited, inter alia, both the Minor and Stockham cases. Adopting the views supported by the two Florida cases, the court quoted from Christenson v. Christenson, 281 Minn. 507, 162 N.W.2d 194 (Minn.Sup.Ct. 1968) as follows:
"Research indicates that with the exception of Bishop v. Bishop, 157 Ga. 408, 121 S.E. 305, all of the cases which have dealt with the legal questions presented herein have recognized that a motion to dismiss a complaint ... should be sustained where the plaintiff has refused to answer the questions pertinent to the issues involved and on the ground of self-incrimination. These decisions appear to have been based upon the rationale that although the privilege against self-incrimination is available to either party to a civil action the party who seeks affirmative judicial relief from the court and at the same time invokes this privilege should not be permitted to prevail and, in effect, `eat his cake and have it too' . . ([162 N.W.2d] at 202)." (sic).
There are other non-domestic relation cases in point. Chronologically, Independent Productions Corporation v. Loews, Inc., 22 F.R.D. 266 (S.D.N.Y. 1958) may well be the earliest case involving the assertion of the Fifth Amendment privileges by a *685 plaintiff. The case was a private treble damage anti-trust action by two corporate plaintiffs and the president of one plaintiff claimed the privilege. The court wrote:
"It would be uneven justice to permit plaintiffs to invoke the powers of this court for the purpose of seeking redress and, at the same time, to permit plaintiffs to fend off questions, the answers to which may constitute a valid defense or materially aid the defense.
"Plain justice dictates the view that regardless of plaintiffs' intention, plaintiffs must be deemed to have waived their assumed privilege by bringing this action. Moore, Federal Rules and Official Forms, 164 (1956)
* * * * * *
"This view strikes home. Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this assertive privilege as both a sword and shield. Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege." Id. 276, 277.
Chief Justice Desmond and six other Justices of the New York Court of Appeals, further developed the sword and shield metaphor:
"The privilege against self-incrimination was intended to be used solely as a shield, and thus a plaintiff cannot use it as a sword to harass a defendant and to effectively thwart any attempt by defendant at a pre-trial discovery proceeding to obtain information relevant to the cause of action alleged, and possible defenses thereto. (See also Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483; Hazlett v. Bullis, 12 A.D.2d 784, 209 N.Y.S.2d 601 [2 Dept. 1961]);" Laverne v. Incorp. Village of Laurel Hollow, 18 N.Y.2d 635, 272 N.Y.S.2d 780, 219 N.E.2d 294 (1966).
In a civil action on a fire insurance policy wherein the insurer alleged arson by the insured as an affirmative defense, a Federal District Court in Wisconsin had the same issue before it. In Kisting v. Westchester Fire Insurance Company, 290 F. Supp. 141, 149 (W.D.Wis. 1968), that court also verbalized its opinion in terms of the sword and shield metaphor holding:
"Plaintiffs' next contention is that the privilege against self-incrimination justifies Kisting's refusal to answer the questions involved. Plaintiffs thus seek to utilize the privilege not only as a shield, but also as a sword. This they cannot do. A plaintiff in a civil action who exercises his privilege against self-incrimination to refuse to answer questions pertinent to the issues involved will have his complaint dismissed upon timely motion. See Stockham v. Stockham, 168 So.2d 320, 4 A.L.R.3d 539 (Fla. 1964); Lund v. Lund, 161 So.2d 873 (Fla.App. 1964); Levine v. Bornstein, 13 Misc.2d 161, 174 N.Y.S.2d 574 (S.Ct., Kings Co. 1958); aff'd, 7 A.D.2d 995, 183 N.Y.S.2d 868 (2d Dept.), aff'd, 6 N.Y.2d 892, 190 N.Y.S.2d 702, 160 N.E.2d 921 (1959); Franklin v. Franklin, 365 Mo. 442, 283 S.W.2d 483 (1955); Ann., 4 A.L.R.3d 545. Cf. Zaczekv v. Zaczekv, 20 A.D.2d 902, 249 N.Y.S.2d 490 (2d Dept. 1964);" Id. 149.
See also Bramble v. Kleindienst, 357 F. Supp. 1028 (D.Colo. 1973), aff'd, 498 F.2d 968 (10 Cir.1974), cert. denied, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 and Penn Communications Specialties, Inc. v. Hess, 65 F.R.D. 510 (E.D.Pa. 1975).
Thus, it appears that not only the Florida law, but the majority view in this land is that a plaintiff may not seek affirmative relief in a civil action and then invoke the Fifth Amendment to avoid giving discovery in matters pertinent to the litigation. Consequently, we grant certiorari, affirm the trial court's order as to paragraphs (1) and (2) and reverse the trial court's order as to paragraphs (3) and (4) and direct the circuit court to order Houghton to answer on discovery the pertinent and material questions as to the remaining counts of his suit and if he fails to answer them, then upon proper motion, to dismiss those counts to which those questions appertained.
*686 AFFIRMED in part; REVERSED in part.
SCHEB, A.C.J., and DANAHY, J., concur.
NOTES
[1] The Honorable W.T. Roberts, Sheriff of Pinellas County, is also a party to this action, but is not involved in this petition for writ of certiorari.
[2] The questions which Houghton refused to answer related to source of title, such as, how and when Houghton came into possession of the money; how much money was actually in the box; what Houghton did to earn the money, and so forth, which are pertinent and material to the issue. Other questions which Houghton refused to answer such as where had he come from, where he was enroute to, and the like, may very well not be pertinent and material to the issue of the suit, but we do not reach that question at this point and prefer to permit the trial judge to rule on that point, if and when raised, in view of our eventual decision in this case.