Carl D. WEHLING and Geraldine D. Wehling, Plaintiffs-Appellants,

v.

COLUMBIA BROADCASTING SYSTEM, Defendant-Appellee.

No. 77–2840.

United States Court of Appeals, Fifth Circuit.

Dec. 28, 1979.

Rehearing Denied Feb. 14, 1980. See 611 F.2d 1026.

Joel W. Westbrook, Bruce L. Goldston, San Antonio, Tex., for plaintiffs-appellants.

Thomas R. Phillips, Houston, Tex., for defendant-appellee.

Before MORGAN, RONEY and GARZA, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

In this diversity case plaintiff[1] appeals from the dismissal of his libel action under Rule 37, Fed.R.Civ.P., for refusing to answer certain questions posed by CBS during plaintiff's oral deposition. Wehling asserted his Fifth Amendment privilege against compelled self-incrimination in response to the district court's order to comply with defendant's discovery request. The question presented is whether the court abused its discretion in denying Wehling's motion for a protective order and dismissing his complaint with prejudice. For reasons discussed below, we reverse the district court and remand so that the court might enter a protective order temporarily staying further discovery in this action.

---

1. Both Carl D. Wehling and his wife, Geraldine D. Wehling were named as plaintiffs in the complaint filed against CBS, and both of the Wehlings are appellants here. Because only Carl Wehling asserted his Fifth Amendment privilege during discovery, we will, for purposes of convenience, refer to appellants as either "Wehling" or "plaintiff."

## I.

Carl and Geraldine Wehling, the owners of a number of Texas proprietary and trade schools, filed this libel action alleging that they had been defamed by a television news story appearing on the CBS Evening News on August 18, 1975. The broadcast stated that Wehling had defrauded both his own students and the federal government through abuse of federal student loan and grant programs. When CBS sought pre-trial discovery from plaintiff concerning the details of the operation of these schools, Wehling invoked his Fifth Amendment privilege against self-incrimination "as to all questions with respect to his operation of the schools." [2]

The district court ordered Wehling to answer the questions posed to him at his deposition or suffer dismissal of his lawsuit for failure to make discovery. Wehling then filed a motion for a protective order asking the court to fashion some type of relief [3] short of outright dismissal which would respect the rights of both parties. The court denied plaintiff's Motion for Protective Order and again ordered him to submit to discovery. Wehling informed CBS that he would continue to claim his Fifth Amendment privilege, and on July 29, 1977, the court dismissed plaintiff's action with prejudice.

Prior to the broadcast, Wehling had been subpoenaed to appear before a federal grand jury investigating federally insured student loan programs. In all five of his appearances before the grand jury, Wehling asserted his Fifth Amendment privilege against self-incrimination. On the date CBS took plaintiff's oral deposition, Wehling's counsel stated that he had reason to believe that the grand jury investigation was continuing, that Wehling was a target of that investigation, and that CBS had

been cooperating with the United States Attorney's office and the Attorney General of Texas.[4] Accordingly, counsel advised Wehling to invoke the Fifth Amendment 19 times during the course of the deposition in response to questions which related to the subject matter of the pending grand jury investigation. In refusing to answer any question regarding his operation of the schools, Wehling deprived CBS of information concerning the accuracy of its broadcast and thus thwarted discovery of issues at the heart of plaintiff's lawsuit.

## II.

Under the federal discovery rules, any party to a civil action is entitled to all information relevant to the subject matter of the action before the court *unless such information is privileged.* Fed.R.Civ.P. 26(b)(1). Even if the rules did not contain specific language exempting privileged information, it is clear that the Fifth Amendment would serve as a shield to any party who feared that complying with discovery would expose him to a risk of self-incrimination. The fact that the privilege is raised in a civil proceeding rather than a criminal prosecution does not deprive a party of its protection. *Lefkowitz v. Cunningham,* 431 U.S. 801, 805, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977); *McCarthy v. Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 69 L.Ed. 158 (1924). Thus, under both the Federal Rules of Civil Procedure and the Constitution, Wehling was under no obligation to disclose to CBS information that he reasonably believed might be used against him as an accused in a criminal prosecution. *Maness v. Meyers,* 419 U.S. 449, 461, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Hoffman v. United States,* 341

---

**2.** Deposition of Carl D. Wehling, May 23, 1977.

**3.** The Motion for Protective Order did not specify what relief the court should award plaintiff. However, the accompanying Memorandum Brief indicated that plaintiff desired a stay of further discovery until all threat of criminal liability had terminated.

**4.** The Attorney General of Texas was, at that time, involved in litigation against Carl Wehling under the Texas Consumer Protection Act concerning Wehling's ownership and operation of proprietary schools. CBS has admitted that it interviewed a number of people at the United States Attorney's office, the state Attorney General's office, and the Department of Health,

U.S. 479, 486, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).[5]

The question here, however, is not whether Wehling had a right to invoke the constitutional privilege against self-incrimination, which he did, but what effect the assertion of this privilege would have on his libel action against CBS. Wehling argues that dismissing his lawsuit because he asserted his self-incrimination privilege in effect penalized him for exercising a fundamental constitutional right. He claims that the district court abused its discretion by making the invocation of the Fifth Amendment privilege "costly." *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). CBS, on the other hand, argues that the district court properly respected the rights of both parties when, though recognizing Wehling's right to assert the self-incrimination privilege, it remedied the resulting unfairness to CBS by dismissing the action. Furthermore, CBS contends that postponing discovery pending termination of the grand jury proceedings or expiration of the limitations period would prejudice its efforts to prepare a defense to Wehling's claim.

We do not dispute CBS's assertion that it would be unfair to permit Wehling to proceed with his lawsuit and, at the same time, deprive CBS of information needed to prepare its truth defense. The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword. This he cannot do. *See, e. g., Lyons v. Johnson,* 415 F.2d 540 (9th Cir. 1969); *Kisting v. Westchester Fire Ins. Co.,*

290 F.Supp. 141 (W.D.Wis.1968). Wehling, however, has not claimed the right to proceed to trial without answering the questions posed by CBS during the deposition. Instead, Wehling asks only that discovery be stayed until all threat of criminal liability has ended. We must decide whether, under the circumstances of this case, plaintiff should have been required to forego a valid cause of action in order to exercise his constitutional right to avoid self-incrimination.

We hold that the district court erred in concluding that plaintiff's assertion of his self-incrimination privilege during pretrial discovery automatically required the dismissal of his libel action. First, we find no provision in the federal discovery rules which authorizes a court to impose sanctions on a party who resists discovery by asserting a valid claim of privilege. *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2018 (1970). Rule 26 limits the scope of discovery to matter that is "not privileged." Because CBS had no right to information protected by the privilege against self-incrimination, Wehling did not violate the discovery rules when he declined to answer the questions posed at his deposition. In short, the district court had no authority to order Wehling to disclose privileged information and, consequently, should not have imposed sanctions when Wehling declined to answer.[6]

Second, we believe that dismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible. Wehling had, in addition to his Fifth Amendment right to silence, a due process right to a judicial determination of his civil

---

Education, and Welfare before formulating and broadcasting its news story.

5. If a party reasonably apprehends a risk of self-incrimination, he may claim the privilege though no criminal charges are pending against him, *Savannah Sur. Associates, Inc. v. Master,* 240 Ga. 438, 439, 241 S.E.2d 192, 193 (1978), and even if the risk of prosecution is remote. *In re Master Key Litigation,* 507 F.2d 292, 293 (9th Cir. 1974).

6. While dismissal is unavailable as a *sanction,* the district court is not precluded from using dismissal as a *remedy* to prevent unfairness to the defendant. As we indicate below, however, dismissal may only be used as a remedy of last resort where the plaintiff's refusal to submit to discovery is based on his exercise of a constitutional right.

action. When the district court ordered Wehling to answer CBS' questions or suffer dismissal, it forced plaintiff to choose between his silence and his lawsuit. The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another. *Simmons v. United States*, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Similarly, the Court has emphasized that a party claiming the Fifth Amendment privilege should suffer no penalty for his silence:

> In this context "penalty" is not restricted to fine or imprisonment. It means, as we said in *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106, the imposition of any sanction which makes assertion of the Fifth Amendment privilege "costly."

*Spevack v. Klein*, 385 U.S. 511, 515, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967). We agree with the Ninth Circuit's conclusion in *Campbell v. Gerrans*, 592 F.2d 1054, 1058 (9th Cir. 1979), that dismissing a party's action because he asserts his Fifth Amendment privilege makes resort to that privilege "costly."[7] *See* 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2018 at 148.

■ We recognize, of course, that Wehling is not the only party to this action who has important rights that must be respected. As we have observed, CBS should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability. "While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby." *Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213, 227 (D.Kan.1979). Therefore we emphasize that a civil plaintiff has no absolute right to both his silence and his lawsuit. Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege. When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant.

■ The district court's task in this case was complicated by the presence of competing constitutional and procedural rights. In focusing solely on CBS' right to the requested information, the court failed to attribute any weight to Wehling's right to his day in court. Instead of arbitrarily adopting a rule favoring CBS, the court should have measured the relative weights of the parties' competing interests with a view toward accommodating those interests, if possible. This balancing-of-interests approach ensures that the rights of both parties are taken into consideration before the court decides whose rights predominate.[8]

■ We find that the balance in this case tips in favor of Wehling and against CBS. Wehling filed his suit against CBS on August 17, 1976, the last day before limitations ran on any libel action arising out of the August 18, 1975 broadcast. Wehling had disposed of his last interest in the trade schools in August of 1975 and, under the applicable statute of limitations,[9] was

---

7. CBS distinguishes *Campbell v. Gerrans* on the basis that in that case plaintiffs refused to answer only peripheral questions which defendant had no right to have answered anyway. The court did note that the four unanswered interrogatories "were of a highly questionable nature." 592 F.2d at 1057. It is arguable, therefore, that the court reversed because the questions were irrelevant and not because plaintiffs asserted a constitutional privilege. While the court's discussion of privilege is perhaps unnecessary to its decision, the court's views on this question are clear and there is little doubt as to how the court would hold were the question of privilege squarely presented.

8. *See generally*, Comment, Penalizing the Civil Litigant Who Invokes the Privilege Against Self-Incrimination 24 U.Fla.L.Rev. 541, 547 (1972); Note, Use of the Privilege Against Self-Incrimination in Civil Litigation, 52 Va.L.Rev. 322, 335 (1966).

9. Counsel informs the court that under 18 U.S. C.A. § 3282 Wehling was subject to a five year statute of limitations for any criminal activity related to his operation of the schools. Al-

threatened with potential criminal prosecution until approximately September 1, 1980. Thus, when Wehling filed his Motion for Protective Order in July 1977, he in effect was asking the court to stay further discovery for approximately three years. Although a three-year hiatus in the lawsuit is undesirable from the standpoint of both the court and the defendant, permitting such inconvenience seems preferable at this point to requiring plaintiff to choose between his silence and his lawsuit. *Dienstag v. Bronsen*, 49 F.R.D. 327, 329 (S.D.N.Y.1970); *Paul Harrigan & Sons, Inc. v. Enterprise Animal Oil Co.*, 14 F.R.D. 333 (E.D.Pa.1953); *National Discount Corp. v. Holzbaugh*, 13 F.R.D. 236 (E.D.Mich.1952).[10] Because staying discovery would not impose undue hardship on defendant and, therefore, would protect the party exercising a constitutional privilege from *unnecessary* adverse consequences, we believe the court abused its discretion in denying Wehling's Motion for a Protective Order and dismissing the lawsuit.

Finally, we wish to emphasize that although dismissal of the lawsuit was premature at this stage of the proceeding, the district court is not precluded from dismissing plaintiff's action if circumstances arise which require the use of this drastic remedy. It is possible that avenues of discovery open to CBS in 1977 will be closed by the time the stay is lifted in 1980. Should the district court determine that postponing discovery has deprived CBS of crucial information which otherwise would have been available and that the lack of such information has compromised CBS' ability to prove truth, the court would be free to fashion whatever remedy is required to prevent unfairness to defendant. However, prejudice to defendant must be established before any remedies are appropriate.

The dismissal of Wehling's lawsuit is reversed and the case remanded so that the court may enter a protective order staying further discovery until the applicable statute of limitations has run.

REVERSED and REMANDED.

---

though the Motion for Protective Order did not refer to the date on which the limitations period would expire, the court never suggested that that information would be important in its consideration of plaintiff's motion.

**10.** We recognize that in each of these cases the self-incrimination privilege was claimed by a civil *defendant.* CBS suggests that such cases are inapplicable where it is a plaintiff who invokes his constitutional right of silence. Although the plaintiff-defendant distinction has its advocates, *see, e. g. Jones v. B. C. Christopher & Co.*, 466 F.Supp. 213 (D.Kan.1979); *Mi-*

nor v. Minor, 240 So.2d 301 (Fla.1970), we are unwilling to join their ranks. It is true that, as a voluntary litigant, the civil plaintiff has created the situation which requires him to choose between his silence and his lawsuit. In most cases, however, a party "voluntarily" becomes a plaintiff only because there is no other means of protecting legal rights. As one commentator has observed, although the plaintiff-defendant "distinction is superficially appealing, . . . civil plaintiffs seldom voluntarily seek situations requiring litigation." Comment, *supra* note 8 at 545.