543 So.2d 778 (1989)
VILLAGE INN RESTAURANT and Gallagher-Bassett Services, Inc., Appellants,
v.
Sam ARIDI, Appellee.
No. 87-1387.
District Court of Appeal of Florida, First District.
March 31, 1989.
*779 Jonathan L. Alpert and Randall O. Reder, of Alpert, Josey, Grilli, Paris & Hanna, Tampa, for appellants/cross-appellees.
Stephen L. Rosen and Leo D. Gomez, of Morris & Rosen, P.A., Tampa, for appellee/cross-appellant.

ON MOTION FOR REHEARING
SHIVERS, Judge.
Appellants' Motion for Rehearing or Clarification and appellee's Motion for Rehearing are granted. We withdraw our opinion filed December 16, 1988, and substitute the following opinion therefor.
The employer/carrier (E/C) in this worker's compensation appeal challenge an order of the Deputy Commissioner (DC) ordering the E/C to pay temporary total disability (TTD) benefits, wage-loss benefits, and to pay for future medical treatment. Claimant cross-appeals the DC's denial of wage-loss benefits after December 15, 1986. We affirm the DC's award of TTD benefits through July 20, 1986 and his denial of wage-loss benefits after December 15, 1986. We remand for further proceedings on those benefits awarded between July 21, 1986 and December 15, 1986, and we reverse the award of future medical benefits.
The DC determined from the depositions of the experts taken in this case that the exchanges between the attorneys revealed a serious question as to whether the E/C intended to authorize any medical treatment for the claimant beyond what had already been provided. For that reason, the DC specifically authorized claimant's physician to continue treatment of the claimant as necessary.
Claimant did not request future medical benefits, not in his claim, not in the pretrial stipulation, and not in the notice of hearing. Thus, the DC's award of future medical benefits must be reversed as the issue was not properly placed in controversy. Sewell Plastics, Inc. v. Jackson, 418 So.2d 442 (Fla. 1st DCA 1982); Central Oil Company v. Campen, 390 So.2d 191 (Fla. 1st DCA 1980). All involved parties must have notice of the issues to be disputed and determined. Allman v. Meredith Corp., 451 So.2d 957 (Fla. 1st DCA 1984).
We reject the claimant's contention that because the E/C did not object to future medical benefits the issue is waived on appeal. Since the claimant never properly raised the issue below, he cannot now maintain that failure to object constitutes waiver; there was nothing before the E/C to which an objection could be made. We also reject the contention that the DC's determining an issue not properly placed into controversy is readily correctable, technical error that the E/C failed to attempt to have the DC rectify within the time available for correction. Such error must be the kind that could commonly be considered inconsequential. Department of Labor & Employment Security v. American Building Maintenance, 449 So.2d 932 (Fla. 1st DCA 1984). We cannot say that awarding future medical benefits where none were properly claimed and noticed is of no consequence.
On January 5, 1986, while working for Village Inn, claimant slipped and fell in his employer's freezer and struck his back and head. On July 20, 1986, claimant's physician advised him that he should return to light work and could lead a normal life if he observed minor restrictions on physical activity. On October 15, 1986 claimant's physician assigned him a five percent permanent impairment rating and determined that he had reached maximum medical improvement (MMI). The DC did not abuse his discretion by accepting the testimony of claimant's physician in awarding TTD benefits from the date of accident to July 20, *780 1986, the date claimant was advised to return to light work.
The DC found that after July 20, claimant's "efforts" with a real estate businessman through October 15, 1986 were a reasonable alternative to working with Village Inn and to submitting work search forms. What the DC meant by "efforts" is not clear. "Efforts" could hardly have been used by the DC to mean "work search" because he refers to only one employer. The record in this case strongly suggests that claimant's "efforts" were actually gainful employment which, if the DC were to find, would require reversal of the TTD award after July 20, 1986. E.g., Suncrete Corp. v. Schofield, 490 So.2d 990, 992 (Fla. 1st DCA 1986) ("TTD benefits ... award is improper during those times a claimant demonstrates a partial ability to work.").
At deposition, claimant testified that except for the few days when he worked for his original employer, he had not otherwise been employed or had any income. However, after being confronted with evidence that he had worked in the real estate field he admitted to it. The E/C demonstrated that during the pertinent time period, claimant had in fact deposited thousands of dollars in various accounts, travelled extensively, and purchased a Mercedes Benz. The E/C also discovered numerous documents, including W-2 forms, a November 1986 pay stub, and a salary statement on an auto loan application, all indicating work related income on the part of the claimant during the pertinent time period.
In his order, the DC did not discuss most of this substantial evidence, and did not explain his reasons for not doing so. We thus remand the portion of the TTD award between July 21, 1986, the day after claimant was advised to return to light work, and October 15, 1986, the date claimant reached MMI, for consideration of the evidence that suggests the claimant had work related income. Magic City Bottle & Supply Co. v. Robinson, 116 So.2d 240 (Fla. 1959); McCandless v. M.M. Parrish Construction, 449 So.2d 830 (Fla. 1st DCA 1984).
We decline to disturb the DC's findings regarding claimant's credibility. Irving v. City of Daytona Beach, 472 So.2d 810 (Fla. 1st DCA 1985). Whatever of the DC's findings was made in reliance upon claimant's testimony should be supplemented by the discussed evidence that the DC is directed to consider.
Competent, substantial evidence in the record supports the DC's award of wage-loss benefits for the period October 16, 1986 through the date claimant voluntarily limited his income, December 15, 1986. The record shows that claimant conducted an adequate job search; and, medical testimony in the record supports the conclusion that claimant sustained a permanent, physical impairment contributing to wage-loss. The record supports the DC's denial of wage-loss benefits after December 15, 1986 based on the finding that claimant voluntarily limited his income.
However, under section 440.15(3)(b)1, Fla. Stat. (1985), claimant must have actually earned less than 85 percent of his average monthly wage during the pertinent time period. Otherwise, the wage-loss calculation will result in a zero sum. Again, as with the TTD award already discussed, the record is replete with evidence that claimant had work related income during the pertinent time periods. The impact of that evidence should be considered with respect to the wage-loss award also. Magic City Bottle & Supply Co., supra; McCandless, supra.
Claimant was deposed a total of three times. In his May 29, 1987 deposition claimant invoked the fifth amendment and refused to answer questions concerning the amount and sources of his income. By an earlier order, the DC denied the E/C's motions to dismiss and to compel which, in effect, upheld claimant's invocation of the privilege. The E/C appealed and in Vicorp Restaurants, Inc. v. Aridi, 510 So.2d 1082 (Fla. 1st DCA), review denied, 519 So.2d 988 (Fla. 1987), we denied review stating that the E/C would have a complete and adequate remedy on plenary appeal.
In its petition for rehearing, appellant argues that appellee, because he was the plaintiff below, should not be permitted to use the fifth amendment to shield himself from inquiry about work related income. *781 Generally, a plaintiff in a civil action may not invoke the fifth amendment and refuse to comply with discovery requests pertinent to the litigation. E.g., Rollins Burdick Hunter v. Euroclassics Ltd., 502 So.2d 959 (Fla. 3d DCA 1987). This doctrine is commonly referred to as the "sword and shield" doctrine, e.g., Fischer v. E.F. Hutton and Company, 463 So.2d 289 (Fla. 2d DCA 1984), and is not without conflict in Florida. Much of the case law has arisen through dissolution appeals. The Third District in Simkins v. Simkins, 219 So.2d 724 (Fla. 3d DCA 1969), declined to follow the Florida Supreme Court case Stockham v. Stockham, 168 So.2d 320 (Fla. 1964), in which the wife sued for divorce but was compelled to answer interrogatories regarding adultery. The Stockham court held that failure to answer would result in dismissal of her suit. In support of its departure in Simkins, the Third District cited two United States Supreme Court decisions which, as the dissent points out, involved parties who were summoned to appear and who were not before the respective tribunals voluntarily. The Florida Supreme Court addressed the Stockham and Simkins decisions in Minor v. Minor, 240 So.2d 301 (Fla. 1970), and adhered to the Stockham decision and disapproved the result reached in Simkins. The Minor Court reviewed the United States Supreme Court decisions relied upon in Simkins and held that they did not require alteration of the Stockham decision. The Minor decision allows dismissal of a suit where a civil plaintiff refuses to comply with discovery by asserting the fifth amendment privilege.
We recognize that although Minor put to rest the conflict created by Simkins, the subsequent case of Fischer, supra, indicates that some uncertainty remains. The petitioner/defendant in Fischer invoked the fifth amendment in response to all questions at deposition. The district court denied certiorari and held that the petitioner was required to make specific self incrimination objections to particular questions. In discussing its ruling, however, the Fischer court did not limit use of the fifth amendment shield to defendants stating "that in a civil proceeding, a person is exempt from answering questions which may constitute a link in a chain of evidence leading to his conviction in a criminal case." Id. at 290. (Emphasis added.) Following this language are two cites, one was a United States Supreme Court case over whether a civil nonparty deponent's immunity granted in a prior criminal proceeding vitiates his need to "take the fifth" (the Court held that it did not and thus the defendant's use of the fifth amendment was proper). Pillsbury Company v. Conboy, 459 U.S. 248, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). The other was a state case involving defendants in a RICO civil forfeiture action. Delisi v. Smith, 423 So.2d 934 (Fla. 2d DCA 1982).
In addition, Minor has not been roundly accepted. In an appeal involving a libel action against CBS, the Fifth Circuit Court of Appeals declined to follow the Florida Supreme Court's plaintiff-defendant distinction in Minor. Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir.1979). The federal court stated
[i]t is true that, as a voluntary litigant, the civil plaintiff has created the situation which requires him to choose between his silence and his lawsuit. In most cases, however, a party `voluntarily' becomes a plaintiff only because there is no other means of protecting legal rights. As one commentator has observed, although the plaintiff-defendant `distinction is superficially appealing, ... civil plaintiffs seldom voluntarily seek situations requiring litigation.'
Id. at 1089, n. 10. The circuit court held that "dismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible." The circuit court added that a civil plaintiff does not have an absolute right to both silence and his lawsuit; but, neither does a civil defendant have an absolute right to have the action dismissed any time a plaintiff invokes his constitutional privilege. "When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." Id. at 1088.
A review of the record in this case shows that the questions on which the *782 claimant invoked the fifth amendment, though pertinent in attempting to establish work related income during the relevant period, would, if answered, be likely to expose claimant to criminal liability, particularly fraud. Indeed, E/C's counsel alluded to the possibility that claimant could be exposed to fraud if he answered his questions.
Notwithstanding claimant's potential exposure, we find his invocation of the fifth amendment required the trial court to levy proper sanctions. Though Minor and Stockham suggest that dismissal of a plaintiff's action is the only sanction, we do not believe they restrictively require dismissal in every case where a plaintiff invokes the privilege. In accord with Minor and the expansive view of Wehling, supra, we vacate the DC's denial of the E/C's motions to dismiss and compel and remand to the DC for the fashioning of an appropriate sanction that will relieve prejudice from the E/C's defense.
The E/C in this case examined a former IRS investigator about documents that indicated that the claimant had work related income during the pertinent time periods. The method used by the investigator in arriving at his opinions on earned income is known as the indirect method of proving income. This method has been approved by the U.S. Supreme Court for use in tax cases. Holland v. United States, 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954). We find that in a case such as this one, where the claimant refused to answer questions about work related income, consideration of other proffered evidence tending to show work related income becomes particularly important. For this reason the DC should have considered the proffered expert testimony here.
AFFIRMED in part, REVERSED in part, and REMANDED in part for further proceedings.
BOOTH and THOMPSON, JJ., concur.