711 So.2d 1206 (1998)
Victor BRANCACCIO, Appellant,
v.
MEDIPLEX MANAGEMENT OF PORT ST. LUCIE, INC., a Florida corporation as general partner for Savannas Hospital Limited Partnership, a Florida limited partnership, d/b/a Savannas Hospital, Donald Berghman, M.D., Donald Berghman, M.D., P.A., Hermin I. Levin, Ph.D., and Hermin I. Levin, Ph.D., P.A., Appellees.
No. 97-1013.
District Court of Appeal of Florida, Fourth District.
April 30, 1998.
Rehearing, Rehearing, Clarification and Certification of Conflict Denied July 8, 1998.
Kenneth J. Sobel of Greenspoon, Marder, Hirschfeld, Rafkin, Ross & Berger, P.A., Fort Lauderdale, for appellant.
Janis Brustares Keyser of Gay, Ramsey & Warren, P.A., West Palm Beach, for appellees Mediplex and Berghman.
Louise H. McMurray of Stephens, Lynn, Klein & McNicholas, P.A., Miami, for appellees Levin.
Rehearing, Rehearing En Banc, Clarification and Certification of Conflict Denied July 8, 1998.

*1207 CORRECTED OPINION

FARMER, Judge.
Victor Brancaccio killed an elderly woman one month after being released from Savannas Hospital, a psychiatric institution. He admitted the killing but contended that it was induced by an involuntary intoxication caused by medicines he was prescribed at the institution. Nevertheless he was convicted of first degree murder. On direct appeal, this court reversed for a new trial because the trial court had refused to give a jury instruction on the primary theory of defense, involuntary intoxication from prescribed medication. Brancaccio v. State, 698 So.2d 597 (Fla. 4th DCA), rev. denied, 705 So.2d 10 (Fla.1997).
Before his retrial on the criminal charges, he filed a civil action against the psychiatric institution and the professionals there involved in his treatment. He alleged that they had negligently evaluated and treated him for his psychiatric condition and that, but for their negligence, he would not have committed the murder. He gave the required notice of intent to initiate litigation[1] just prior to the expiration of the two-year statute of limitations, but refused to give a presuit statement[2] to defendants. Instead, he offered to produce his parents for this purpose. He then filed a motion to abate the civil action, pending a final resolution of the criminal case.
After conducting a hearing, the trial court gave him 60 days to give a presuit statement and a sworn deposition. He then asserted his Fifth Amendment right of silence and indicated that he would give only his name and date of birth. Thereupon the trial court dismissed the civil action, saying:
"The Court finds that dismissal is the proper remedy where the plaintiff has invoked the Fifth Amendment privilege and refuses to answer any questions pertinent to the issues involved in this case. See: Minor v. Minor, 240 So.2d 301 (Fla.1970); City of St. Petersburg v. Houghton, 362 So.2d 681 (Fla. 2d DCA 1978).
"This court further finds that the plaintiff's refusal to comply with the presuit discovery procedures warrants a dismissal of this action. See: Section 766.106(6)(7), Florida Statutes; Bartley v. Ross, 559 So.2d 701 (Fla. 4th DCA 1990)."
The trial court indicated, however, that it personally preferred a different result. Plaintiff appeals. We reverse.
Plaintiff argues that the trial court wrongly interpreted Minor v. Minor, 240 So.2d 301 (Fla.1970), as requiring a dismissal. In Minor the court had followed its earlier decision in Stockham v. Stockham, 168 So.2d 320 (Fla. 1964). Both of these cases are based on the notion that where the person claiming the privilege is the party initiating the civil litigation in which the privilege is asserted equity requires a dismissal of the action. In both cases, the party claiming the Fifth Amendment privilege had initiated an action for divorce and then refused to answer discovery questions relating to adultery, a defense in such cases before no-fault divorce was enacted. As the court had explained in Stockham:
"The distinction made in the cases is that the privilege against self-incrimination operates as a protection against one being required to incriminate himself in a criminal or other proceeding which might degrade him, however, in civil litigation where it is manifest the exercise of the privilege would operate to further the action or claim of the party resorting to the privilege against his adversary contrary to equity and good conscience, the party asserting privilege will not be permitted to proceed with his claim or action."
168 So.2d at 322.
Before discussing the supreme court decisions in Stockham and Minor, we pause to survey two lower court decisions that the supreme court obviously considered when it decided Minor. The third district had reached a different result in Simkins v. Simkins, 219 So.2d 724 (Fla. 3d DCA 1969), reasoning that the intervening decisions in Spevack v. Klein, 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967), and Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d *1208 562 (1967), had called Stockham into question. Moreover, in Minor v. Minor, 232 So.2d 746 (Fla. 2d DCA 1970), the district court had addressed the United States Supreme Court cases, as well as Simkins, and concluded:
"Initially we observe that Garrity isn't strictly on the mark. That was a criminal case in which the defendants were policemen charged with conspiracy to obstruct the administration of the traffic laws of New Jersey. The specific question before the court was the admissibility of certain inculpatory admissions made during a prior investigation of police irregularities in which the defendants were told that pursuant to a New Jersey statute they would be removed from office as police officers if they invoked the Fifth Amendment privilege. True it is, the court observed that the Fifth Amendment could not be so employed as to place one who would invoke it in the position of choosing `between the rock and the whirlpool,' but the case turned primarily on the involuntary nature of the admissions which were patently elicited at the peril of such a choice; hence such admissions were held to be inadmissible.
"In Spevack, on the other hand, the `penalty' exacted for invocation of the privilege was more direct. That case involved a disbarment proceeding in which a member of the New York Bar was disbarred for invoking the privilege in response to questions relating to professional misconduct. Condemning such action, the court expressly concluded that the Fifth Amendment privilege `should not be watered down by imposing the dishonor of disbarment and the deprivation of a livelihood as a price for asserting it.'
"Now concededly, in those cases, the parties invoking the Fifth Amendment were wrongfully penalized for their `taking the Fifth.' They were forced to choose, as it is said, `between Scylla and Charybdis.' But there they were involuntarily thrust into such quandary, while here, the invoking party is voluntarily the moving party affirmatively seeking equity. Appellant's choice in this case is not, involuntarily, one between two totally disadvantageous alternatives, as were the choices in Garrity and Spevack, but rather, voluntarily, one between two alternatives one of which can be employed to some advantage. Appellant can gain the affirmative relief she seeks from her choice, and the choice is freely hers; Garrity and Spevack on the other hand couldn't gain in any event, yet they were compelled to choose." [c.o.]
232 So.2d at 747. In reviewing this analysis of the district court, the supreme court said:
"We have carefully reviewed Spevack and Garrity, and other related cases for possible impact upon the precise issue now before the Court. We agree with the analysis of a majority of the district court that subsequent United States Supreme Court decisions do not require alteration of our previously expressed conclusion."
240 So.2d at 302. The court did not elaborate further.
Since the supreme court's decision in Minor, the issue was addressed in City of St. Petersburg v. Houghton, 362 So.2d 681 (Fla. 2d DCA 1978), which is not a divorce case but instead involved a claim for money. The police had seized $316,000 in cash from an auto driven by Houghton. He filed an action in replevin seeking a return of his money. The defendants in that action sought to learn in a deposition the source of the funds, and he invoked the privilege. The court began with Stockham, Simkins and Minor, noting that they were divorce cases, after which it turned to some nondivorce cases from various states. The court concluded that:
"the majority view in this land is that a plaintiff may not seek affirmative relief in a civil action and then invoke the Fifth Amendment to avoid giving discovery in matters pertinent to the litigation."
362 So.2d at 685. The district court instructed the trial court to dismiss the action if plaintiff continued to refuse to answer the questions.
This court confronted the issue from a different perspective in Delisi v. Bankers Insurance Co., 436 So.2d 1099 (Fla. 4th DCA 1983), where a defendant in a civil action asserted the Fifth Amendment privilege to discovery questions. Delisi involved a foreclosure *1209 suit brought by a surety on an appearance bond. The defendant had given the surety a mortgage on real property as collateral for the bond. When the criminal defendants failed to appear the bonds were forfeited. The bonding company then sued to foreclose the mortgage, and one of the defendants in the foreclosure action was also potentially a defendant in the criminal case. When that defendant refused to answer deposition questions in the foreclosure suit, the trial judge struck his defenses and entered a default judgment against him on the basis of Stockham/Minor, now called the "sword and shield" doctrine. In reversing the trial judge, we explained:
"the trial court incorrectly applied the `sword and shield' metaphor. This phrase embraces the rule `that a plaintiff may not seek affirmative relief in a civil action and then invoke the Fifth Amendment to avoid giving discovery in matters pertinent to the litigation.' In language approved by the Houghton decision, one court has gone so far as to note that `[p]lain justice dictates the view that regardless of plaintiffs' intention, plaintiffs must be deemed to have waived their assumed privilege by bringing this action....' In the case at bar, petitioner's assertion of affirmative defenses does not constitute a voluntary application for affirmative relief so as to permit utilization of the `sword and shield' doctrine. Thus, the trial court erred in resolving the case on this basis." [c.o.]
436 So.2d at 1100. We then followed the lead of the second district in Delisi v. Smith, 423 So.2d 934 (Fla. 2d DCA 1982), and held that "the trial court burdened the petitioner's assertion of the Fifth Amendment privilege without discerning whether the petitioner was entitled to invoke the privilege." 436 So.2d at 1101. We further explained that we could not determine whether any sanctions against the defendant would be proper and remanded the case for additional proceedings. The second district later followed our Delisi decision in Fischer v. E.F. Hutton & Co., 463 So.2d 289 (Fla. 2d DCA 1984), where the privilege was also claimed by a defendant.
In a more recent case, Village Inn Restaurant v. Aridi, 543 So.2d 778 (Fla. 1st DCA 1989), the first district has concluded that the sword and shield doctrine under Minor should not be read to require a dismissal every time a civil plaintiff invokes the Fifth Amendment privilege. In reaching its conclusion the court relied to a great extent on Wehling v. Columbia Broadcasting System, 608 F.2d 1084 (5th Cir.1979). Because that federal court decision played such an important role in the first district's ultimate conclusion, it is necessary to give it close attention.
Wehling involved a defamation suit by the owner of a trade school against CBS over a publication that the owner had defrauded the federal government under the student loan program. At the same time a grand jury was investigating the owner for possible criminal charges arising from the same loan program. When CBS propounded questions to the owner in the civil case relating to the alleged defamation, he asserted his Fifth Amendment privilege. After the trial court dismissed the civil action, the Fifth Circuit reversed. The court recognized that its decision would allow a party to initiate an action and then claim the privilege against relevant discovery in that action. But the court said:
"The question here ... is ... what effect the assertion of this privilege would have on his libel action against CBS. Wehling argues that dismissing his lawsuit because he asserted his self-incrimination privilege in effect penalized him for exercising a fundamental constitutional right. He claims that the district court abused its discretion by making the invocation of the Fifth Amendment privilege `costly.' Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). CBS, on the other hand, argues that the district court properly respected the rights of both parties when, though recognizing Wehling's right to assert the self-incrimination privilege, it remedied the resulting unfairness to CBS by dismissing the action. Furthermore, CBS contends that postponing discovery pending termination of the grand jury proceedings or expiration of the limitations period would prejudice its efforts to prepare a defense to Wehling's claim.

*1210 "We do not dispute CBS's assertion that it would be unfair to permit Wehling to proceed with his lawsuit and, at the same time, deprive CBS of information needed to prepare its truth defense. The plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain an unequal advantage against the party he has chosen to sue. To hold otherwise would, in terms of the customary metaphor, enable plaintiff to use his Fifth Amendment shield as a sword. This he cannot do. Wehling, however, has not claimed the right to proceed to trial without answering the questions posed by CBS during the deposition. Instead, Wehling asks only that discovery be stayed until all threat of criminal liability has ended. We must decide whether, under the circumstances of this case, plaintiff should have been required to forego a valid cause of action in order to exercise his constitutional right to avoid self-incrimination.
608 F.2d at 1087.
Having set out the nature of the problem, the court proceeded to explain its result.
"[W]e believe that dismissing a plaintiff's action with prejudice solely because he exercises his privilege against self-incrimination is constitutionally impermissible. Wehling had, in addition to his Fifth Amendment right to silence, a due process right to a judicial determination of his civil action. When the district court ordered Wehling to answer CBS' questions or suffer dismissal, it forced plaintiff to choose between his silence and his lawsuit. The Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another. Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968). Similarly, the Court has emphasized that a party claiming the Fifth Amendment privilege should suffer no penalty for his silence:
`In this context `penalty' is not restricted to fine or imprisonment. It means, as we said in Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), the imposition of any sanction which makes assertion of the Fifth Amendment privilege `costly."

Spevack v. Klein, 385 U.S. 511, 515, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). We agree with the Ninth Circuit's conclusion in Campbell v. Gerrans, 592 F.2d 1054, 1058 (9th Cir.1979), that dismissing a party's action because he asserts his Fifth Amendment privilege makes resort to that privilege `costly.'" (emphasis supplied).
608 F.2d at 1087-1088.
The court did not dismiss the obvious interest of the civil defendant in discovery of facts relevant to the claim and its defenses. The court said:
"We recognize, of course, that Wehling is not the only party to this action who has important rights that must be respected. As we have observed, CBS should not be required to defend against a party who refuses to reveal the very information which might absolve defendant of all liability. `While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby.' Therefore we emphasize that a civil plaintiff has no absolute right to both his silence and his lawsuit. Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege. When plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." [c.o., emphasis supplied.]
608 F.2d at 1088.
In Village Inn the first district agreed that sanctions may be necessary where a plaintiff in a civil action invokes the Fifth Amendment privilege against revealing relevant information in pretrial discovery. Based on Wehling, however, it disagreed that the sword and shield doctrine in Florida always requires a dismissal of the action. The proper remedy, the court held, is to fashion "an appropriate sanction that will relieve prejudice from the *1211 [plaintiff's invocation of the privilege]." 543 So.2d at 782.
Plaintiff argues that the sword and shield doctrine applied by our supreme court was used only in divorce cases. And it is true, of course, that Stockham and Minor were divorce cases in which the party seeking the divorce had refused to answer questions as to alleged adultery, which was both a crime and a defense to divorce. Plaintiff observes that as a practical matter there was no statute of limitations in these old divorce cases, and that the cause of action for divorce could always be renewed at any time. In this civil action, however, any dismissal bars plaintiff from ever filing the same action because the statute of limitations on his negligence claim against this psychiatric hospital and the professional providers has already run.
Moreover, he stresses, there is a substantive overlap between the criminal charges yet to be tried and his claim of negligence in his civil action. His defense in the criminal case involves the same core of facts as his claims in the civil case. As part of his alleged damages in the civil action, he has claimed that he has suffered a deprivation of liberty from the criminal charges. He must also necessarily defend himself against the criminal charges, he argues, if for no other reason than to mitigate any civil damages. He argues that he is using his Fifth Amendment privilege as a temporary shield during the pendency of the criminal case. When that case has been concluded, he will no longer assert the privilege and will be able to answer the defendant's inquiries. Indeed, before filing his civil action he asked defendants to agree to an abatement pending the outcome of the criminal trial, but the defendants have refused.
Defendants counter that because plaintiff alleges that their negligence proximately caused him to commit this murder, the testimony that he refuses to divulge is crucial in preparing their defenses in the civil case. Indeed, they say, it goes to the very heart of his claims. They contend that the allegation as to the improper administration of the prescription drugs is indistinguishable with the defense that would exonerate him in the criminal case. His assertion of the privilege in the civil action thus avoids giving testimony helpful to the civil defendants and indefinitely delays the case. Delay prejudices them, for memories fade and witnesses die. They argue that Florida law has permitted abatement only when a party has been involuntarily thrust into litigation as a defendant and that here plaintiff voluntarily initiated the action. Even if a Wehling balancing approach were followed, they say, it would favor them because of this prejudicial delay. It has been over four years, they observe, since the murder; and the case has been remanded for a new trial. It could be several more years before the criminal case is fully resolved, and such a delay would undoubtedly prejudice them greatly.
We are not unsympathetic to the prejudice described by defendants. At the same time, however, we find much to the Wehling analysis. The supreme court has employed the sword and shield doctrine only in a class of cases where dismissal does not effectively terminate the plaintiff's right to the cause of action. Assuming for the sake of argument that plaintiff in this case was induced to commit the crime only because of the negligent acts of the civil defendants, his invocation of his Fifth Amendment privilege exacts a heavy price. He will be forever barred from seeking any compensation from the actors whose negligence placed him in the position of having to defend against those criminal charges. A dismissal of his cause of action leaves him, unlike the plaintiffs in Stockham and Minor, with no possibility of renewing his civil claims after the exposure to the criminal charges has been ended.
Nor have the defendants made the case for dismissal anticipatorily, rather than after the final result in the criminal case. While they certainly face the prospect that delay in discovery will affect their ability to defend the case fairly, they have failed to establish that the prospect is inevitable. There is no reason why the dismissal, if it should come at all, must be imposed before any actual prejudice to the defense in the civil case is really known. We therefore follow the lead of the court in Village Inn and hold that the sword and shield doctrine applied by Florida courts does not inexorably require a dismissal. When, as here, the statute of limitations has already run on the claim, and there is a *1212 reasonably foreseeable end in sight for the criminal exposure, the court in the civil action should ordinarily await that final outcome before addressing whether dismissal is required by unavoidable prejudice to the defendant.
REVERSED AND REMANDED FOR CONSISTENT PROCEEDINGS.
DELL, J., concurs.
KLEIN, J., concurs specially with opinion.
KLEIN, Judge, concurring specially.
I agree entirely with Judge Farmer's opinion. I am not sure, however, that I could ever bring myself to dismiss plaintiff's claim, even if defendants can demonstrate prejudice because of the delay in being able to depose him. I say that because, as our opinion reflects in the case reversing his criminal conviction for a new trial, plaintiff had given a detailed statement to the police as to the events leading up to the killing and the actions he took thereafter. There was also evidence that his I.Q. is "just above retarded" and that he had a "probable brain injury" from events surrounding his birth or a near drowning. Brancaccio, 698 So.2d at 597.
In light of defendant's access to the evidence in the criminal case, the fact that the criminal charges may have arisen from involuntary actions, and plaintiff's due process right to bring his civil action, I would find it difficult to ever dismiss his claim, no matter how long the criminal case takes.
NOTES
[1] § 766.106(2), Fla. Stat. (1995).
[2] §§ 766.106(6) and (7), Fla. Stat. (1995).