USCA1 Opinion

 

 United States Court of Appeals For the First Circuit ____________________ No. 95-1931 GEORGE J. SERAFINO AND ANITA M. SERAFINO, Plaintiffs, Appellants, v. HASBRO, INC., ET AL., Defendants, Appellees. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Michael A. Ponsor, U.S. District Judge] ___________________ ____________________ Before Torruella, Chief Judge, ___________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ Morris M. Goldings with whom Ellen S. Shapiro was on brief for ___________________ _________________ appellants. Arthur G. Telegen with whom Amy B.G. Katz, Charles S. Cohen, and _________________ ______________ _________________ David G. Cohen were on brief for appellees. ______________ ____________________ April 23, 1996 ____________________ COFFIN, Senior Circuit Judge. Plaintiff-appellant George _____________________ Serafino brought a lawsuit against Hasbro, Inc. ("Hasbro") and its CEO, George R. Ditomassi, Jr., claiming that they unlawfully terminated certain business arrangements and then his employment because his daughter filed a discrimination action against them. During discovery, Serafino refused to answer questions pertaining to alleged improprieties surrounding the business arrangements, invoking his Fifth Amendment privilege against self- incrimination. Upon determining that Serafino's silence on these matters unfairly hampered defendants' ability to mount a defense, the district court dismissed Serafino's claims with prejudice.  In this appeal, we must determine whether dismissal constitutes an impermissible infringement on Serafino's constitutional right against self-incrimination. After due consideration, we conclude that the district court acted within its power and discretion in dismissing Serafino's claims, and affirm. BACKGROUND1 From 1972 until his termination in December 1994, Serafino worked as a mechanic and then group leader for the Milton Bradley Company ("Milton Bradley"), a division of Hasbro since 1985, located in Springfield, Massachusetts. In addition to his regular employment, Serafino had three unusual business arrangements with Milton Bradley. In 1976, Serafino created  ____________________ 1 Since this appeal is from an order granting a motion to dismiss, we derive the facts from the pleadings. PHC, Inc. v. _________ Pioneer Healthcare, Inc., 75 F.3d 75, 77 (1st Cir. 1996). ________________________ -2- Hampden Battery Service, Inc. ("Hampden Battery"), which serviced and reconditioned batteries used in Milton Bradley vehicles. Then, in 1984, he formed ABC Janitorial Services ("ABC"), which performed nightly cleaning service at Milton Bradley buildings. Finally, in 1985, he assumed responsibility for supervising ground maintenance at the company's facilities, for which he was guaranteed 20 hours a week of overtime.  Anita Serafino,2 George Serafino's daughter, also worked at Milton Bradley. In January 1992, she filed a complaint with the Massachusetts Commission Against Discrimination alleging that a co-worker had sexually harassed her. In July 1993, both Serafinos filed a complaint in Hampden Superior Court against Hasbro and Ditomassi alleging sex discrimination and retaliation. In particular, George Serafino alleged that Ditomassi, as a retaliatory measure, instructed two high-ranking company employees, Joseph Gulluni and Arthur Peckham, to terminate the three extracurricular business ventures. The overtime arrangement was discontinued on January 1, 1993, the business relationship with Hampden Battery in April of 1993, and the relationship with ABC in mid-1994. Based on these events, Serafino advanced three theories of liability: violation of  ____________________ 2 To avoid confusion, Anita Serafino will always be referred to by her full name; George Serafino, at times, will be referred to only as "Serafino." -3- Mass. Gen. L. Ann. ch. 151B3, quantum meruit, and intentional _______ ______ interference with advantageous relationship.  Serafino was deposed in the fall of 1994. Defendants pursued a line of questioning concerning improprieties surrounding Hampden Battery, ABC and the overtime benefits, focusing, in particular, on how Serafino, Gulluni and Peckham might have illegally benefitted from these ventures. Serafino, invoking his rights under the Fifth Amendment and Article 12 of the Massachusetts Declaration of Rights, refused to answer most questions relating to these matters. Such questions included: Did you give money to other people as a condition for doing business with Milton Bradley? [Did] Mr. Peckham ever get any financial benefit from  ABC Cleaning Services? Why did [Mr. Gulluni] have you report to his office  every day? Do you have any financial relations with Mr. Peckham? Were you involved in criminal activity together? Isn't it true that Mr. Peckham got financial benefit  from your companies that was illegal? George Serafino was discharged from Milton Bradley in December 1994. Shortly thereafter, the Serafinos amended their complaint to include this termination as a further act of  ____________________ 3 Chapter 151B protects people against unlawful discrimination. Wheelock College v. Massachusetts Comm'n Against ________________ ____________________________ Discrimination, 371 Mass. 130, 137, 355 N.E.2d 309 (1976). ______________ Serafino accused defendants of violating chapter 151B, 4(4A), which makes it unlawful for any person "to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter." -4- retaliation. In response, defendants removed the case to federal court, on the ground that consideration of the discharge would require the court to interpret a collective bargaining agreement, bringing Serafino's claim within Section 301 of the Labor Management Relations Act, 29 U.S.C. 185.  On March 31, 1995,4 defendants submitted a motion to dismiss Serafino's claims. They claimed that by refusing to respond to their questions, Serafino had prevented them from discovering important information about the very benefits that he sued to recover. Defendants asserted that the questions surrounding the benefits were central to the case: If . . . Serafino paid criminal bribes to Milton Bradley employees to maintain his unusually favorable overtime arrangement, battery business and cleaning services, then he is in no position to claim that defendants somehow wrongfully took these benefits away . . . [or that] his termination was [not] proper. In rebuttal, Serafino disputed the relevance of the questions, suggesting that defendants were instead attempting to garner information for their RICO complaint. On July 28, 1995, the district court dismissed all of Serafino's claims with prejudice and remanded Anita Serafino's claims to the state court. DISCUSSION Serafino attacks the district court's decision on two fronts: first, he argues that, as a matter of law, the court did  ____________________ 4 A few days earlier, Hasbro filed a civil RICO complaint against Serafino, Gulluni and Peckham alleging a course of conduct involving kickbacks, overcharging and other illegal activity. -5- not have the power to dismiss his claims; second, he contends that the court abused its discretion in concluding that his constitutional interest was outweighed by possible prejudice to defendants. We address these issues in turn. A. The District Court's Power to Dismiss  _____________________________________ Serafino argues that the legitimate exercise of one's Fifth Amendment privilege can never justify dismissal of a civil claim -- a contention not without force. The Supreme Court has stated that the Fifth Amendment "guarantees . . . the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such _______ silence." Spevack v. Klein, 385 U.S. 511, 514 (1967) (quoting _______ _____ Malloy v. Hogan, 378 U.S. 1, 8 (1964)) (emphasis added). The ______ _____ concept of "penalty" includes "the imposition of any sanction which makes assertion of the Fifth Amendment privilege 'costly.'" Id. at 515 (quoting Griffin v. California, 380 U.S. 609, 614 ___ _______ __________ (1965)).  Unconstitutional penalties for the invocation of the privilege have included disbarment of a lawyer, see Spevack, 385 ___ _______ U.S. at 516; forfeiture of jobs by public employees, see Gardner ___ _______ v. Broderick, 392 U.S. 273, 278 (1968) and Uniformed Sanitation _________ ____________________ Men Ass'n v. Commissioner of Sanitation, 392 U.S. 280, 284-85 _________ ___________________________ (1968); and imposition of substantial economic sanctions, see ___ Lefkowitz v. Turley, 414 U.S. 70, 82-83 (1973). While automatic _________ ______ dismissal of a civil action could fall neatly within this category, see Wehling v. Columbia Broadcasting Sys., 608 F.2d ___ _______ ___________________________ -6- 1084, 1087-88 (5th Cir. 1979), we cannot agree that dismissal is always impermissible. See id. at 1087 n.6 ("[T]he district court ___ ___ is not precluded from using dismissal as a remedy to prevent ______ unfairness to the defendant."). The Supreme Court has indicated that the assertion of the privilege may sometimes disadvantage a party. See Baxter v. ___ ______ Palmigiano, 425 U.S. 308, 318 (1976) (allowing adverse inferences __________ to be drawn from a civil party's assertion of the privilege); _____ Flint v. Mullen, 499 F.2d 100, 104 (1st Cir. 1974) ("[N]ot every _____ ______ undesirable consequence which may follow from the exercise of the privilege against self-incrimination can be characterized as a penalty."). We think that in the civil context, where, systemically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, see United States v. Parcels of Land, ___ _____________ _______________ 903 F.2d 36, 44 (1st Cir. 1990), it also must ensure that the opposing party is not unduly disadvantaged. See Gutierrez- ___ __________ Rodriguez v. Cartagena, 882 F.2d 553, 577 (1st Cir. 1989) _________ _________ (affirming district court's refusal to allow defendant to testify at trial when he asserted Fifth Amendment privilege during discovery). After balancing the conflicting interests, dismissal may be the only viable alternative.5  ____________________ 5 Though dismissal has rarely been imposed or affirmed, a number of courts have acknowledged the court's power to dismiss even in the face of a party's proper assertion of the privilege. -7- We reiterate that the balance must be weighted to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side. See S.E.C. v. Graystone ___ ______ _________ Nash, Inc., 25 F.3d at 187, 192 (3d Cir. 1994); Wehling, 608 F.2d __________ _______ at 1088. As correctly delineated by the district court in this case, "the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it." See Black Panther Party v. Smith, 661 F.2d 1243, 1272 (D.C. ___ ___________________ _____ Cir. 1981), vacated mem., 458 U.S. 1118 (1982) (enunciating ____________ similar balancing approach). Having determined that the district court could, within its discretion, dismiss this case, and that it utilized the proper balancing test, we now evaluate the balancing itself for abuse of discretion. See Parcels of Land, ___ ________________ 903 F.2d at 44.  B. The Court's Balancing Test __________________________ The district court dismissed Serafino's claims upon concluding that 1) the alleged illegal conduct underlying the outside benefits was central to defendants' defense; 2) there was no effective substitute for Serafino's answers; and 3) there was  ____________________ See, e.g., Wehling v. Columbia Broadcasting Sys., 608 F.2d 1084, ___ ____ _______ ___________________________ 1087 n.6 (5th Cir. 1979); Lyons v. Johnson, 415 F.2d 540, 542 _____ _______ (9th Cir. 1969); Mt. Vernon Sav. & Loan v. Partridge Assocs., 679 ______________________ _________________ F. Supp. 522, 529 (D. Md. 1987); Stop & Shop Cos. v. Interstate _________________ __________ Cigar Co., 110 F.R.D. 105, 108 (D. Mass. 1986); Jones v. B. C. _________ _____ _____ Christopher & Co., 466 F. Supp. 213, 227 (D. Kan. 1979); Penn __________________ ____ Communications Specialties, Inc. v. Hess, 65 F.R.D. 510, 512 _________________________________ ____ (E.D. Pa. 1975); Wansong v. Wansong, 395 Mass. 154, 157-58, 478 _______ _______ N.E.2d 1270 (1985).  -8- no adequate alternative remedy to dismissal. Though Serafino hotly disputes each premise, our more detailed analysis compels us to agree with the court's conclusions. -9- 1. Importance of the Information _____________________________ Serafino's alleged illegal conduct is relevant in two ways. First, defendants justify their discharge of Serafino on their belief that he conspired to defraud Hasbro. Under the framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973), _______________________ _____ which generally guides claims under Mass. Gen. L. Ann. ch. 151B, Woods v. Friction Materials, Inc., 30 F.3d 255, 263 (1st Cir. _____ _________________________ 1994), if defendants propose a nonretaliatory reason for the termination and present facts in support, Serafino cannot prevail unless he proves that the reason is pretext, see Tate v. Dep't of ___ ____ ________ Mental Health, 419 Mass. 356, 362-63, 645 N.E.2d 1159 (1995). In _____________ this context, the significance of information that goes directly to the nonretaliatory justification is self-evident. Second, if in fact the benefits were illegally obtained, then defendants could effectively argue that Serafino is not entitled to compensation based on them. Though we do not, and need not, determine whether his alleged misconduct would foreclose all possible relief,6 we easily conclude that, at the very least, it would greatly diminish his recovery. Cf. McKennon ___ ________ v. Nashville Banner Pub. Co., 115 S. Ct. 879, 886 (1995) (holding _________________________ that after-acquired evidence of an employee's misconduct does not bar all relief under the ADEA but must be taken into account in determining an appropriate remedy). Without the ability to  ____________________ 6 In addition to seeking compensation for the discontinuation of the three business arrangements, Serafino seeks emotional and exemplary damages, attorneys' fees and injunctive relief against further retaliation. -10- investigate a matter that goes to the heart of the damages sought, defendants would be substantially prejudiced. 2. Alternative Means _________________ The district court found that "there are no company records or other Hasbro employees whose information could effectively substitute for responses from George Serafino himself." We agree. Even if a paper trail might show some irregularities, it is a poor proxy for Serafino's testimony. As for other employees, such as Peckham and Gulluni, if they were involved in illegal conduct, they would almost certainly assert their Fifth Amendment privilege. If, instead, they denied involvement, defendants would be back at square one, handicapped in their defense by Serafino's silence.  3. Alternative Remedies ____________________ We are left to consider whether a less drastic remedy would have sufficed. At oral argument on the motion to dismiss, counsel for Serafino listed several possibilities -- staying the matter, allowing an adverse inference to be drawn, and striking testimony -- but did not recommend one, suggesting instead that the court's first alternative should be a motion to compel. We doubt that the court could have ordered Serafino to answer questions to which the privilege attached. See Wehling, 608 F.2d ___ _______ at 1087. In any event, since counsel did not even suggest that Serafino would waive his privilege, a motion to compel was not a reasonable alternative.  -11- Though he never requested one, Serafino contends that the court could have issued a stay and cites Wehling in support. In _______ Wehling, the Fifth Circuit reversed the denial of plaintiff's _______ motion for a protective order and stayed the civil proceedings for three years, until the expiration of the criminal limitations period. 608 F.2d at 1089. Here, upon considering Serafino's failure to file a motion, and the hardship that delay would impose on defendants, the district court refused to sua sponte ___ ______ impose a stay. We cannot say this constitutes an abuse of discretion.  CONCLUSION Information regarding potential illegal conduct in connection with the three business ventures was crucial to defendants' ability to mount an effective defense, and was uniquely within plaintiff's control. While Serafino had an absolute constitutional right not to reveal any potentially incriminating material, his invocation of that privilege, in these circumstances, placed defendants at a significant disadvantage. Because the district court did not abuse its discretion in balancing the interests at stake, we affirm its decision to dismiss Serafino's claims. Affirmed. ________ -12-