Pesante Martínez, Jueza Ponente
*695 TEXTO COMPLETO DE LA SENTENCIA
El apelante Colegio de Ingenieros y Agrimensores de Puerto Rico (en adelante, “Colegio”) interesa la revocación de una sentencia dictada por el Tribunal de Primera Instancia, Sala Superior de Guayama (en adelante “TPF) de 23 de abril de 2004. Mediante la misma se declaró no ha lugar la solicitud de injunction preliminar y se desestimó la causa de acción que originó el presente pleito, bajo el fundamento de que al apelado lo cobijaba el privilegio constitucional a no autoincriminarse y ante la supuesta admisión del Colegio de que dicha prueba testifical era la única con que contaban para probar su caso.
Revocamos la sentencia en controversia.
I
El 16 de mayo de 2003, el Colegio presentó ante el TPI una acción extraordinaria sobre petición de injunction contra el apelado Miguel Danilo Aponte Malavé. El recurso pretendía que le fuera ordenado al apelado el cese y desista del ejercicio de la práctica ilegal de la ingeniería o agrimensura en Puerto Rico a tenor con la Ley Núm. 319 del 15 de mayo de 1938, 20 L.P.R.A see. 731 et seq., según enmendada por la Ley Núm. 12 de 29 de septiembre de 1980; y Ley Núm. 173 del 12 de agosto de 1988, 20 L.P.R.A. sec. Ill et seq. La parte apelada se opuso al argumento planteado en su contra mediante la presentación de una solicitud de desestimación de la causa de acción instada.
Oportunamente, el Colegio presentó su oposición á la desestimación solicitada. A modo de sustentar sus alegaciones, los apelantes incluyeron entre su Demanda y su escrito de oposición varios exhibits, los cuales constaban, entre otros, de los siguientes documentos: 1) estado de cuenta preparados por el apelado correspondiente a descripción de trabajos en proceso, costos, pagos y balances de “Engineering Architecture & Surveying Consulting Group”, una firma que aparentemente se dedica a proveer servicios de ingeniería y agrimensura; 2) tarjeta de presentación del apelante donde se anuncia como “Principal” de “Engineering” 3) carta certificada con acuse de recibo de 13 de noviembre de 2002 suscrita por el Ing. Eliú Hernández Gastón, Director de Práctica Profesional del Colegio, y enviada al apelado solicitando de éste el cese y desista de ofrecer servicios de ingeniería y agrimensura ilegalmente; y 4) fotografía de la fachada del edificio donde alegadamente estaba la oficina de Aponte, ubicado en el Municipio de Cayey. Entretanto, el TPI señaló vista para explorar la procedencia tanto del injunction preliminar presentado como de la solicitud de desestimación y su oposición.
Luego de varios incidentes procesales, y llegado el día de la celebración de la vista el 16 de enero de 2004, las partes tuvieron la oportunidad inicial de presentar sus respectivas argumentaciones.
Como parte de su argumentación para sustentar su petitorio de carácter extraordinario, el Colegio hizo mención de una carta presentada conjuntamente con la acción incoada e indicó que la misma no había sido autenticada ni admitida aún en evidencia por lo que solicitó no se tomara en consideración hasta tanto fuera sometida como tal conforme las Reglas de Evidencia.
Sin embargo, cuando el apelante intentó presentar como prueba documental los documentos de referencia, el TPI suspendió la vista ya en progreso. Esto fue así, ya que, aun cuando de la Minuta que recoge los incidentes procesales suscitados en la referida vista no consta, el Colegio refirió que la representación legal del apelado invocó el privilegio contra la autoincriminación cuándo su representado fue llamado a prestar testimonio como testigo del apelante, es decir, antes de que se le fórmúlara pregunta alguna. En vista de ello, el TPI suspendió la vista y solicitó de las partes que sometieran un Memorando de Derecho en cuanto al privilegio constitucional levantado. En su consecuencia, el Colegio alegó que no pudo ofrecer en evidencia la prueba testifical y documental con la cual intentaba probar y detener la conducta ilegal mencionada.
*696 Cumplida dicha Orden, y a instancia de los apelantes para que se continuara con los procedimientos, el 23 de abril de 2004, el TPI emitió la sentencia apelada declarando no ha lugar a la petición de injunction preliminar y desestimó la causa de acción presentada por el Colegio contra Aponte Malavé. A la oportuna solicitud de reconsideración presentada por los apelantes, el foro apelado declaró igualmente la misma no ha lugar.
El 27 de mayo de 2004, inconformes con dicho curso decisorio, el apelante Colegio acude ante nos mediante el recurso de título formulando la comisión de los siguientes errores:

“ERRÓ EL [TPI] AL CONCLUIR QUE LA ÚNICA PRUEBA DE LA PARTE DEMANDANTE EN ESTE CASO ERA EL TESTIMONIO DEL DEMANDADO.

ERRÓ EL [TPI] AL JUZGAR LA NATURALEZA JURÍDICA DEL [COLEGIO].

ERRÓ EL [TPI] AL ANALIZAR LA NATURALEZA DEL RECURSO DE INJUNCTION RADICADO.

ERRÓ EL [TPI] EN SU INTERPRETACIÓN DEL PRIVILEGIO CONSTITUCIONAL A LA NO AUTOINCRIMINACIÓN Y SU APLICACIÓN EN ESTE CASO. ”

Expuestos los hechos pertinentes a la controversia ante nuestra consideración, procederemos a exponer la norma jurídica aplicable.
II
Por estar íntimamente relacionados, discutiremos los cuatro errores planteados en conjunto.
La controversia planteada en el presente caso gira en tomo a definir, como punto de partida, la naturaleza y función social del Colegio de Ingenieros y Agrimensores de Puerto Rico, en específico, la procedencia de su capacidad para regular y punir la práctica ilegal, o sin autoridad para ello, de la profesión aludida en el Estado Libre Asociado de Puerto Rico. A renglón seguido, examinaremos si el privilegio constitucional contra la autoincriminación, de arraigo eminentemente criminal, es de aplicación en casos civiles. Aun contestando en al afirmativa, es nuestro deber determinar si el privilegio puede ser invocado por la parte apelada según la situación fáctica presentada y acorde con la etapa procesal descrita.
A. Naturaleza jurídica del Colegio de Ingenieros y Arquitectos de Puerto Rico
La práctica de la ingeniería está regulada por la Ley 173 del 12 de agosto de 1988 (20 L.P.R.A. Sec. 711 et seq.) En su Art. 4, supra, Sec. 711b, provee una definición general de lo que constituye la práctica de esa profesión. Esa actividad comprende la prestación de cualquier trabajo profesional o la ejecución de cualquier trabajo de naturaleza creadora para cuya resolución se requieran los conocimientos, adiestramientos y experiencias de un ingeniero o arquitecto. Dicha ley incorporó, a modo de ilustración, una lista abierta de actividades que pueden ser consideradas como práctica de la ingeniería como trabajo de asesoramiento, estudios, investigaciones, valoraciones, la realización de trazado de planos, mediciones, inspecciones y superintendencias de obras en constmcción, a los fines de asegurar la observación de sus especificaciones y la realización adecuada de lo proyectado en relación con cualesquiera obras públicas o privadas, instalaciones, maquinarias, procedimientos y métodos industriales, equipo, sistema y trabajos de carácter técnico en ingeniería o en arquitectura. íd. sec. 711b(a).
Con el fin de agrupar a los profesionales con derecho a ejercer la ingeniería y la agrimensura, la Ley Núm. 319 del 15 de mayo de 1938, 20 L.P.R.A see. 731 et seq., creó el Colegio de Ingenieros y Agrimensores de Puerto Rico como una corporación cuasi pública. Conforme su ley habilitadora, entre las obligaciones y deberes se encuentra la de contribuir al adelanto de la ingeniería y la agrimensura en Puerto Rico, determinar medidas de *697 protección mutua y coayudar a una legislación razonable y justa especialmente en cuanto tenga relación con la profesión de ingeniero. Col. Ing. Agrim. P.R. v. A.A.A., 131 D.P.R. 735, 753-754 (1992).
Con la aprobación de la Ley Núm. 12, supra, la Legislatura enmendó la ley habilitadora del Colegio para proveer los mecanismos necesarios que permitan un mejor funcionamiento de la institución y para que pueda en esa forma descargar su responsabilidad pública. Véase, Exposición de Motivos, Ley Núm. 12, supra. Entre las nuevas facultades concedidas al Colegio por ese estatuto se encuentra la siguiente:

“El Colegio de Ingenieros y Agrimensores de Puerto Rico tendrá facultad:

(k) para recibir e investigar las quejas que se formulen respecto a situaciones que puedan resultar en la práctica ilegal de las profesiones, de violaciones relacionadas con éstas, y de existir evidencia a tales efectos, si se tratare de personas no colegiadas, proceder ante las autoridades competentes a los fines de que se cumplan las leyes relativas a la práctica de las profesiones.

20 L.P.R.A. sec. 732(K). Conforme a la Ley Núm. 12, supra, se prohíbe a toda persona ejercer la profesión de ingeniería sin contar con la correspondiente licencia otorgada por la Junta Examinadora de Ingenieros y que no sea miembro activo del Colegio de Ingenieros y Agrimensores de Puerto Rico. En armonía con al sección antes citada, la See. 742 de la Ley Núm. 319, supra, impone penalidades de multa o cárcel, o ambas penas, a las personas que practiquen ilegalmente la ingeniería o' la agrimensura, siendo considerado el mismo como delito menos grave, con un término prescriptivo de un año.
Mediante la Ley Núm. 12, supra, se le añadió a dicha sección que el Secretario de Justicia, por iniciativa propia o a solicitud del Colegio, podría entablar acciones ante los tribunales competentes contra aquéllos que practican ilegalmente la profesión.
En Col. Ing. Agrim. P.R. v. A.A.A., supra, se tuvo la oportunidad de interpretar el alcance de las citadas disposiciones ante un planteamiento similar al que hoy nos ocupa. Mediante una acción de sentencia declaratoria y nulidad de cláusulas contractuales, el Colegio alegó en ese caso que la Autoridad de Acueductos y Alcantarillados (A.A.A.) había suscrito un contrato de servicios profesionales con una corporación nombrada Metcalf para que ésta llevara a cabo ciertos trabajos de ingeniería. Acompañó con la demanda copia del contrato suscrito por la Autoridad y Metcalf, así como una copia del Convenio Suplementario suscrito por éstas con I posterioridad al contrato original. De los referidos documentos se desprendía con claridad la naturaleza de las labores que dicha corporación se obligaba a realizar, entre los cuales se reservaba funciones que estaban incluidas dentro de la definición legal de práctica de la ingeniería, tales como revisar el trabajo de diseño o ingeniería en progreso e interpretar planos de construcción y especificaciones. En consideración a los documentos sometidos, solicitó el Colegio que se decretara que Metcalf estaba incurriendo en la práctica ilegal de la ingeniería. Se basó en que, al ser una persona jurídica, la ley la imposibilitaba de poder ejercer dicha profesión. Asimismo, reclamó que se declarase como práctica ilegal de la ingeniería el uso por parte de la entidad del título de ingeniero junto con su nombre corporativo.
Metcalf y la A.A.A. presentaron por separado mociones de sentencia sumaria. Con ellas acompañaron copia del contrato original y de un Convenio Suplementario mediante el cual la primera se comprometió a referir la labor de ingeniería a unos ingenieros licenciados miembros de una sociedad profesional. Con lo anterior estimaron que la controversia se había tomado académica. El TPI denegó las solicitudes de sentencia sumaria. Inconformes, acudieron éstas en certiorari al Tribunal Supremo. Adujeron que el Colegio carecía de legitimación *698 activa para entablar la demanda, pues la misma, en todo caso, debía tramitarse a través del Secretario de Justicia. Además, insistieron en la legalidad de las cláusulas contractuales.
Al tener ante sí la controversia sobre la impugnación de legitimación activa, en dicho caso, se resolvió que con la enmienda introducida mediante la Ley Núm. 12, supra, al Colegio se le facultó para acudir por su cuenta ante las autoridades competentes para que se hagan cumplir las leyes que regulan la práctica de la profesión cuando tenga evidencia para creer que existe una situación en contra de personas no colegiadas que puede resultar en la práctica ilegal de la ingeniería o la agrimensura. Véase, Col. Ing. Agrim. P.R., supra, a la pág. 762. Se aclaró que para efectos de la Sec. 732(k) de la Ley 319, supra, y en atención al historial legislativo de la Ley Núm. 12, supra, el término “autoridades competentes” se refiere al foro judicial. Id., a la pág. 575.
Además, en Col. Ing. Agrim. P.R., supra, el Tribunal Supremo hizo una distinción entre la facultad del Colegio para entablar acciones en el área de lo criminal y en lo civil. En cuestiones de naturaleza criminal, se determinó que el Colegio tiene un deber de referir las acciones contra las personas que practican ilegalmente la ingeniería al Secretario de Justicia, ya que la referida institución carece de la autoridad legal para acusar criminalmente a los que delinquen mediante su práctica ilegal. Col. Ing. Agrim. P.R., supra, a la pág. 759.
Por otro lado, en el ámbito civil, la Ley 319, supra, concede al Colegio la potestad para presentar ante los tribunales las acciones “que estime pertinentes” contra los no colegiados que ejerzan ilegalmente, a modo de garantizar que se cumplan las leyes que rigen la práctica de las profesiones. Nos dice el Tribunal Supremo lo siguiente:

“El propio legislador, mediante la enmienda de 1980, hizo la distinción entre la facultad del Colegio para promover acciones civiles ante los tribunales cuando exista evidencia del ejercicio ilegal de la profesión, —ya sean acciones directas a nombre del Colegio o bien a través del Secretario de Justicia-, y el deber del Colegio de referir todo acto que conlleve práctica ilegal al Secretario de Justicia para que también se celebre el consiguiente procedimiento penal:”

Col. Ing. Agrim. P.R., supra, a la pág. 759. (Bastardillas en el original).
Aclarado lo anterior, se pasó a evaluar si en el caso existía la evidencia requerida por la Sec. 732(k) de la Ley Núm. 319, supra, al Colegio para promover la presente demanda de sentencia declaratoria. Sobre este particular se manifestó que el texto de la Sec. 732(k) supra, no especifica el tipo de evidencia que se ha de presentar ante el tribunal. Sólo dispone sobre la posible existencia de evidencia, en general, que propenda a demostrar la práctica ilegal de la profesión. Por tratarse de un'caso civil, la decisión del juzgador será tomada de acuerdo con la preponderancia de las pruebas a base de criterios de probabilidad. Regla 10(F) de Evidencia, 32 L.P.R.A. Ap. IV; Col. Ing. Agrim. P.R., supra.
En vista de lo anterior, el Tribunal Supremo concluyó que el Colegio tenía la facultad y la evidencia exigida en la citada Ley Núm. 319, en su Sec. 732(k), supra, para creer que había una situación que podía resultar en práctica ilegal de la ingeniería y, en virtud de la capacidad provista por su ley habilitadora, estaba facultado para instar en los tribunales la demanda de sentencia declaratoria en contra de la A.A.A. y Metcalf.
Recapitulando, la mencionada Ley Núm. 319, en su Sec. 732(k), faculta al Colegio para acudir ante los tribunales para impedir que personas no colegiadas incurran en la práctica ilegal de la ingeniería. Sin embargo, para instar la acción correspondiente, debe la institución previamente investigar y recopilar evidencia suficiente que le permita creer que existe una situación que puede resultar en el ejercicio ilegal de dicha profesión. Compete a los tribunales evaluar, en el momento apropiado, si existe la evidencia requerida al Colegio para promover su acción, como una sentencia declaratoria, o un injunction, como en Col. Ing. Agrim. P.R., supra. La determinación se tomará de acuerdo con la preponderancia de la evidencia a base de criterios de probabilidad. El Tribunal *699 Supremo, mediante dicha determinación, acreditó la potestad inherente del Colegio para recopilar evidencia, del carácter y tipo que entienda pertinente y, una vez pasado el crisol sobre aquella prueba tendente a validar su caso, presentar la misma ante el tribunal por los medios provistos para ello.
Por otro lado, en el caso de marras, el apelante cuestiona la razón por la cual el TPI acogió el planteamiento de la parte apelada sobre su derecho a invocar el privilegio contra la autoincriminación al momento de ser llamado a testificar durante la celebración de la vista de 16 de enero de 2004 y antes de ser interrogado de forma alguna. La parte apelada, por conducto de su representación legal, se opuso a la aludida pretensión e invocó la defensa constitucional contra la autoincriminación durante el proceso civil celebrado en su contra. El apelado argüyó que invocó el privilegio, ya que podría obtenerse mediante su testimonio evidencia inculpatoria la cual eventualmente podría ser utilizada en su contra mediante un procedimiento criminal bajo las disposiciones pertinentes de la Ley Núm. 173, supra.
B. Derecho a la no autoincriminación en el ámbito de la litigación civil
La Quinta Enmienda de la Constitución de los Estados Unidos, así como la Sección 11 del Artículo II de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico, garantiza el derecho de todo ciudadano contra la autoincriminación. 1 L.P.R.A. En específico, nuestra constitución dispone que: "nadie será obligado a incriminarse mediante su propio testimonio...”. Id.
El Tribunal Supremo de los Estados Unidos ha dispuesto respecto a la Quinta Enmienda y el derecho a la no autoincriminación que: "guarantees ... the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty ... for such silence." Speack v. Klein, 385 U.S. 511, 514, 87 S. Ct. 625, 627, 17 L. Ed. 2d. 574 (1967). Véase además, Serafino v. Hasbro, Inc., 82 F. 3d 515, 517 (1st. Cir. 1996).
Por otro lado, la Regla 24 de Evidencia, 32 L.P.R.A. Ap. IV, dispone respecto al privilegio a la no autoincriminación que ”[t]oda persona tiene el privilegio de rehusar revelar cualquier materia que tienda a autoincriminarle, a menos que la persona haya obtenido inmunidad a ser castigada por el delito en relación al cual podría incriminarse". Sin embargo, la Regla 33 de Evidencia, 34 L.P.R.A. Ap. IV, permite que una persona renuncie a los privilegios que posea, sea ya porque se obligó con otra a no ejercerlo, o porque voluntariamente divulgó o permitió la divulgación del mismo. No obstante lo anteriormente expuesto, la norma enunciada no es de aplicación cuando se trata del privilegio a la autoincriminación y del privilegio de todo acusado a no declarar. Id.
Respecto al alcance del privilegio contra la autoincriminación, los profesores Wright, Miller y Marcus, en su obra Federal Practice and Procedure, Civil 2d, West, 1994, see. 2018, a las págs. 270-271, establecen lo siguiente:

“The famous words of the Fifth Amendment, “no person ... shall be compelled in any criminal case to be a witness against himself, ” have no obvious application to pretrial discovery in a civil action, but history has given the words a broader reading than is literally required. ”

Así, en McCarthy v. Arndstein, 266 U.S. 34 (1924), el Tribunal Supremo federal reconoció la aplicabilidad del mencionado precepto constitucional en los procedimientos civiles. Señaló entonces que:

“The Government insists, broadly, that the constitutional privilege against self-incrimination does not apply in any civil proceeding. The contrary must be accepted as settled. The privilege is not ordinarily dependent upon the nature of the proceeding in which the testimony is sought or is to be used. It applies alike to civil and criminal proceedings, wherever the answer might tend to subject to criminal responsibility him who gives it. The privilege protects a mere witness as fully as it does one who is also a party defendant. ”

*700 Luego, en Lefkowitz v. Turley, 414 U.S. 70 (1973), el Tribunal Supremo de Estados Unidos reiteró dicha normativa. Allí indicó que:

“The [Fifth] Amendment not only protects the individual against being involuntary called as a witness against himself in a criminal prosecution, but also privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings. ”

Sobre este punto, expresa el profesor Ernesto Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, supra, sec. 3.2, pág. 119:

“El privilegio contra la autoincriminación puede ser invocado en todo tipo de procedimiento gubernamental, sea civil, criminal, administrativo o legislativo. No se trata de que sólo un “acusado ” puede invocar el privilegio. [...] Se trata de un derecho de cualquier ciudadano, cuando se le interroga por autoridad gubernamental en cualquier tipo de procedimiento, no importa el tipo de investigación que se realice. ”

En cuanto a la aplicabilidad del privilegio, el profesor Chiesa añade en la citada obra que el privilegio sólo puede ser invocado cuando el promovente, si contesta verazmente lo que la autoridad gubernamental le pregunta, se expone a un peligro real de responsabilidad criminal. Id., a la pág. 120. “Si contestar a la pregunta de las autoridades pone al testigo o interrogado en riesgo de responsabilidad civil o administrativa, el privilegio no es aplicable, desde el punto de vista de un derecho constitucional. El privilegio, bajo la Enmienda Quinta y la Constitución de Puerto Rico, sólo se refiere a riesgos de responsabilidad criminal.” Id., a la pág. 120. (Citas omitidas y énfasis nuestro).
De otra parte, algunos Tribunales de Distrito Federales se han rehusado admitir como aceptadas las alegaciones de una demanda que no fueron contestadas por haberse invocado el privilegio contra la autoincriminación en casos civiles. National Acceptance Company v. Bathalter, 705 F.2d 924, 927-928 (7th Cir. 1983). Por otro lado, también se han rehusado a validar la desestimación de una demanda aún cuando la parte demandante se ha rehusado a contestar interrogatorios amparándose en su derecho a no autoincriminarse. Thomas v. U.S., 536 F.2d 1054 (5th Cir. 1976). Por ello, es que se ha dispuesto que un litigante no puede ser obligado a escoger entre autoincriminarse o ver su demanda desestimada por falta de su testimonio. Campell v. Gerrans, 592 F.2d 1054 (9th Cir. 1979).
Sin embargo, el Tribunal Supremo Federal ha indicado que "... the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them... ”. Baxter v. Palmigiano, 425 U.S. 308, 318 (1976). De conformidad con lo anteriormente expuesto queda establecido que el juzgador de los hechos puede hacer una inferencia negativa sobre el silencio de una parte litigante cuando existe otra prueba contra él relacionada con su silencio. Por ello, es que se ha establecido que "... defendant’s silence [must] be weighted in light of other evidence rather than leading directly and without more to the conclusion of guilt or liability". LaSalle Bank Lake View v. Segunban, 54 F.3d 387, 391 (7th Cir. 1995).
También se ha establecido que un tribunal tiene la alternativa de paralizar los procedimientos en un caso civil hasta que transcurra el tiempo prescriptivo del delito por el cual la parte demandada pueda ser acusada en el ámbito criminal, para así no recurrir a la desestimación de su causa de acción y continuar con los procedimientos una vez discurra el término. Wheling v. Columbia Broadcasting, 608 F.2d. 1084 (5to Cir. 1980). Aunque, además se ha establecido que en ciertas situaciones, el tribunal puede desestimar la causa de acción de la parte demandante cuando la negativa de la parte demandante a testificar pudiese perjudicar a los demandados. Id.
Un tribunal, ante el reclamo de una parte del privilegio contra la autoincriminación, tiene que hacer un *701 balance entre los intereses de la parte que invoca el privilegio y la parte contra quien se invoca. Al respecto se ha indicado:

“In the light, no negative inference can he draw against a civil litigant's assertion of his privilege against self-incrimination unless there is a substantial need for the information and there is no another, less burdensome way of obtaining that information. ”

Doe ex rel Rudy-Glenzer v. Glenzer, 232 F.3d 1258, 1265 (9th cir. 2000). En Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir. 1996) se ha explicado el balance que hay que hacer de la siguiente manera:

“We reiterate that the balance must be weighted to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more then is necessary to prevent unfair and necessary prejudice to the other side. As correctly delineated by the district court in this case, ‘the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining if. ”

Luego de esbozada la norma jurídica ante nos, procederemos aplicarla a los hechos ante nuestra consideración.
III
En el caso ante nos, el TPI sentenció que el precepto legal aplicable a la situación fáctica presentada era la citada Ley Núm. 173, supra, la cual delinea la creación, facultades, funciones y alcance de los poderes en ley de la Junta Examinadora de Ingenieros, Arquitectos y Agrimensores de Puerto Rico. El TPI, de manera errónea, basa su dictamen en dicha pieza legal citando, específicamente, su Artículo 35, el cual esboza las penalidades a ser impuestas como consecuencia de practicar sin autoridad legal para ello, o sin licencia, la ingeniería o agrimensura. 20 L.P.R.A. sec. 71 ly. Recientemente, dicha sección fue enmendada por la Ley 333 de 29 de diciembre de 2003 mediante la cual el grado del delito aumentó de menos grave a delito grave imponiendo, por ende, una penalidad mayor. De acuerdo a la controversia instada, los preceptos legales aplicables son aquellos dispuestos tanto en la Ley Núm. 319, supra, y la Ley Núm. 12, supra.
En cuanto a la adjudicación de penalidades, de acuerdo a la controversia de autos, la Sección aplicable para determinar las mismas es la Sección 742 de la Ley 319, supra, es decir, la ley habilitadora del Colegio, no la que crea la Junta, según citada por el TPI en la sentencia apelada. 20 L.P.R.A. see. 742. Esta sección, a diferencia de la citada sección 71 ly transcrita en el dictamen que nos ocupa, clasifica el delito de práctica ilegal de la profesión en su grado menos grave y no en su carácter grave; esto es, tiene un período de prescripción de un año y no de cinco, según corresponde a los delitos graves. Es el Colegio, no la Junta, el claustro con la potestad legal para llevar las riendas de la investigación según el cuadro fáctico presentado. Esto es así porque la Junta sólo investiga a “[tjoda aquella persona que practique u ofreciere practicar las profesiones de ingeniería, arquitectura, agrimensura o arquitectura paisajista en el Estado Libre Asociado de Puerto Rico sin estar debidamente autorizada de acuerdo a las sees. 711 a 711z de este título...”. 20 L.P.R.A. sec, 711y. En otras palabras, le corresponde a la Junta Examinadora la facultad (Casos civiles) y el deber (Casos criminales) de velar a los que ya poseen licencia para practicar la profesión o a aquéllos que se hacen pasar por profesional registrado y demás, de que no ejerzan mientras no estén autorizados para ello.
En cambio, al Colegio le corresponde la facultad (Casos civiles) y el deber (Casos criminales) de velar aquellos que están de una manera u otra desprovistos de licencia para practicar. Es decir, “[tjoda persona que sin estar debidamente admitida y licenciada para el ejercicio de la profesión según se dispone por este capítulo o que durante la suspensión de su licencia practique como persona capacitada y autorizada para ello, se anuncie como tal o trate de hacerse pasar como ingeniero o agrimensor en el ejercicio...”. 20 L.P.R.A. see. 742. De acuerdo a los hechos ante nuestra consideración, este es el curso apropiado que corresponde y es el Colegio el *702 ente jurídico con la legitimación jurídica para llevar a cabo la investigación realizada y para presentar la acción que estimó pertinente ante el TPI, tal y como lo hizo.
Habiendo resuelto la controversia periférica que permea el pleito que nos ocupa, pasemos a auscultar la aplicación, si alguna, del privilegio contra la autoincriminación a los hechos planteados. A la luz de los fundamentos esbozados y el ordenamiento jurídico, entendemos que erró el TPI al reconocerle al apelado el privilegio contra la autoincriminación en el momento en que lo hizo y por los fundamentos utilizados para ello. Veamos.
El apelado Aponte Malavé invocó el aludido derecho al momento en que el apelante pretendía examinar su testimonio en corte abierta, una vez comenzada la celebración de la vista señalada para esos propósitos. No estamos ante un caso en que el apelado se negó a contestar preguntas efectuadas por el Colegio. Estamos ante una situación singular en la cual el tribunal permitió que se invocara el privilegio antes de que se le hiciera pregunta alguna que lo sujetara a contestar.
De entrada, resulta ineludible plantear lo siguiente: ¿Cómo podemos avalar la existencia de un peligro real de convicción criminal sin tan siquiera habérsele formulado al apelado ninguna pregunta? Sabido es que el privilegio se puede invocar mediante la activación previa de tres elementos, a saber: (1) que se formule una pregunta; (2) cuya respuesta lleve imbricado el peligro real de (3) responsabilidad criminal. En este caso, no quedaron activados ninguno de los tres elementos para reconocer el privilegio al momento en que se hizo.
Además, el TPI concluyó de forma errónea que la única prueba anunciada por el Colegio para probar su caso era el testimonio del apelado, por lo que optó por reconocerle el privilegio aun antes de que fuera interrogado bajo el supuesto de la posibilidad de autoincriminarse por su mero testimonio. Aquí nos enfrentamos a una multiplicidad factorial que dirige nuestro juicio hacia otra dirección. ¿Cómo va a existir otra evidencia si, al momento de que el Colegio se disponía a presentar los documentos disponibles para que fuesen autenticados y admitidos en evidencia, el TPI suspendió la vista al reconocer el consabido derecho? Y en la alternativa de que hubiese sido sometido a un interrogatorio sobre su conocimiento de los documentos intencionados a convertirse en evidencia admisible, cabe la posibilidad real de que del contenido de los mismos se desprenda que en el ámbito criminal, el delito ya estuviese prescrito. 20 L.P.R.A. see. 742. Expliquemos porqué.
Entre los documentos presentados con el recurso de título figura un estado de cuenta de 19 de diciembre de 1996 emitido por el grupo de consultores donde alegadamente labora el apelado por supuestos servicios realizados por él, los cuales son inherentemente realizados por ingenieros profesionales autorizados. Si el interrogatorio gira sobre el contenido de dicho documento, resulta obvio que el delito ya está prescrito; recordemos que la See. 742 de la Ley 319, supra, describe el delito de práctica ilegal de la profesión como menos grave. Su acción penal prescribe al cabo de un año a computarse desde el día de la comisión del delito hasta la fecha en que se expida el mandamiento de arresto o citación. 33 L.P.R.A. sees. 3412-3413. Del expediente no se desprende fecha de expedición alguna de mandamiento o citación, por lo que ya transcurrido el año para entablar una acción criminal por la comisión de dicho delito, la misma está prescrita. Es decir, aun cuando el TPI interrogue al apelado por el contenido de dicho documento en una acción civil, como bien podría hacerlo, su testimonio ya no puede incriminarlo por ser una acción extinta. Por no existir el riesgo real de responsabilidad criminal, el apelado no puede invocar el privilegio! Contrario a la norma, no hay necesidad ni tan siquiera de paralizar los procedimientos ya, que la acción, en esa instancia, está prescrita. Wheling v. Columbia Broadcasting, supra.
En cambio, si el apelado fuese a ser confrontado mediante el uso de la tarjeta de presentación, conforme a la Sec. 711(x) de la Ley 173, supra, depende de la fecha en que repartió la misma para determinar si el apelado puede invocar el derecho o no. Si la taijeta la entregó a alguien, el delito no estaba prescrito y el apelado invoca el privilegio contra la autoincriminación, no se le debe permitir esa línea de preguntas por existir el peligro real de *703 convicción criminal. En cambio, si la tarjeta la entregó después de que el delito estuviese prescrito e invoca el privilegio, el tribunal no debe reconocer el mismo por la falta de peligro real de convicción criminal.
De conformidad con lo anteriormente expuesto, es forzoso concluir que incidió el TPI al reconocerle al apelado el privilegio contra la autoincriminación en el momento que lo hizo y haber suspendido la vista evidenciaría. Al así hacerlo, el TPI también incidió en haber evitado que el Colegio, dentro de la facultad legal concedida, pudiese presentar evidencia, Col. Ing. Agrim. P.R., supra, de suerte que el TPI, de así entenderlo procedente, emitiera un remedio para prohibir civilmente que el apelado continuara con dicha práctica ilegal. Los cuatro errores invocados fueron cometidos.
Resolvemos, por tanto, que la determinación del TPI en reconocerle al apelado el derecho contra la autoincriminación y que la única prueba con que cuenta el Colegio para probar su caso era el testimonio de Aponte Malavé, constituye un abuso de discreción y como tal debe ser revocada.
IV
Por lo ante expuesto, revocamos la sentencia recurrida.
En su consecuencia, se devuelve el caso al Tribunal de Primera Instancia para que se le de prioridad en calendario y disponga del pleito instado lo antes posible no sin antes explorar la posibilidad se resuelva el pleito instado por la vía extraordinaria del injunction incoado, si es que en esa dirección se inclina la discreción del Tribunal de Primera Instancia.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida Heana Oquendo Graulau
Secretaria General
ESCOLIOS 2005 DTA 8
1. Véase, Apelación, índice del Apéndice, Exhibit I, a lapág. 10.
2.19 de diciembre de 1996, fecha del referido estado de cuenta.
3. Véase Apelación, índice del Apéndice, Exhibit III, a la pág. 38.