Dwayne SWANN, Plaintiff,

v.

**CITY OF RICHMOND,**
**et al., Defendants.**

**No. CIV.A. 3:06CV069.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 17, 2006.

Steven D. Benjamin, Betty Layne Des Portes, Richmond, Joshua David Wolson, Covington & Burling, Washington, DC, for Dwayne Swann, Plaintiff.

David John Freedman, William Joe Hoppe, Office of the City Attorney, David John Freedman, William Joe Hoppe, David P. Corrigan, Harman Claytor Corrigan & Wellman, David John Freedman, Office of the City Attorney, Robert S. Reverski, Jr., Charles Franklin Midkiff, Midkiff Muncie & Ross PC, Richmond, VA, for The City of Richmond, Virginia, James Earl Wilson, Kevin Paul Hathaway, Michael Sean Mocello, Defendants.

### MEMORANDUM OPINION

WILLIAMS, Senior District Judge.

This matter is before the Court on the defendants's motion to compel plaintiff to answer deposition questions. The Court has reviewed the defendants's motion and memoranda and the plaintiff's response. Moreover, a hearing was held on November 8, 2006, at which time both sides presented their positions orally. For the reasons state herein, the defendants's motion to compel plaintiff to answer deposition questions will be denied.

This case arises out of the February 4, 2004 shooting of the plaintiff by the three Richmond police officer defendants in this case. Plaintiff is suing the defendants for monetary damages as a result of the injuries he sustained from that shooting. The liability of the individual defendants turns on whether they acted reasonably when they shot the plaintiff, who was sitting, unarmed, in the backseat of a car at the time.

On August 3, 2006, the plaintiff was deposed. During that deposition, the plaintiff asserted his Fifth Amendment right not to testify against himself in response to a number of questions about his alleged drug use prior to the February 4, 2004 shooting. The defendants contend in their motion that the "[p]laintiff repeatedly refused to answer (1) questions concerning his actions, and (2) concerning his involvement with drugs on the date of the occurrence and their effect on him." Defs.'s Mot. Compel ¶ 6. After reviewing the relevant portions of the plaintiff's deposition transcript, however, the Court can only find instances where the plaintiff refused to answer questions of the latter kind: those concerning his involvement with drugs. Either way, however, the defendants contend that plaintiff's assertion of his Fifth Amendment right in response to these questions was improper and war-

rants either dismissal of the case or a series of jury instructions allowing an adverse presumption as to each item of testimony. The Court disagrees.

■ The Supreme Court noted in *Griffin v. California* that a court may not impose a sanction on a litigant that would make an assertion of his Fifth Amendment privilege "costly." *Griffin v. California*, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). The Supreme Court has gone on to suggest, moreover, that a court cannot compel a party in a civil action "to answer deposition questions ... over a valid assertion of his Fifth Amendment right, absent a duly authorized assurance of immunity at the time." *Pillsbury Co. v. Conboy*, 459 U.S. 248, 256–57, 103 S.Ct. 608, 74 L.Ed.2d 430 (1983). This makes sense because if a party in a civil case were forced to answer deposition questions in a manner that might expose him to criminal liability, he would essentially be forced to choose between asserting his Fifth Amendment privilege and dropping his lawsuit, or continuing with his lawsuit and exposing himself to criminal liability. This is precisely the type of "cost" associated with assertion of a Fifth Amendment privilege that the Supreme Court has condemned. *See Pillsbury*, 459 U.S. at 256–57, 103 S.Ct. 608, *Griffin*, 380 U.S. at 614, 85 S.Ct. 1229. As the D.C. Circuit noted in *Black Panther Party v. Smith*,

> Requiring a plaintiff to choose between proceeding with his lawsuit and claiming the privilege clearly imposes a substantial cost. This cost cannot be justified on the sole ground that the plaintiff chose to initiate the suit and thus can be characterized as a voluntary litigant. Again, an individual "voluntarily" becomes a plaintiff only because he believes the courts provide the best means of protecting his rights. Indeed ... an automatic waiver rule raises serious due process questions; the plaintiff is in effect deprived of his day in court.

*Black Panther Party v. Smith*, 661 F.2d 1243, 1271 (D.C.Cir.1981) (footnote omitted).

Scholarly authority also supports the proposition that district courts should avoid compelling a party in a civil action to answer deposition questions in spite of an assertion of Fifth Amendment privilege. Wright and Miller, for instance, note that "[i]t is inconceivable that by exercising the constitutional right to bring or defend an action a person waives his or her constitutional right not to be a witness against himself or herself, and no case has so held." 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2018 (2d ed.1994). While Wright and Miller go on to note that there is some authority for imposing *sanctions* on such persons, they describe this authority as "scattered." *Id.* None of it, moreover, appears to be binding on this Court. *Id.*

That being said, there are certain limited exceptions to the principle described above, namely those cases where assertion of the Fifth Amendment privilege would thwart "discovery of issues at the heart of plaintiff's lawsuit." *Wehling v. Columbia Broadcasting Sys.*, 608 F.2d 1084, 1086 (5th Cir.1979). Indeed, courts have held that "... it is proper to dismiss the claim of a plaintiff who exercises his privilege against self-incrimination to refuse to answer questions related to the issues involved in the litigation which he has instituted." *Mount Vernon Sav. and Loan v. Partridge Assocs.*, 679 F.Supp. 522, 529 (D.Md.1987). To permit otherwise would allow the party "to gain an unequal advantage against the party he has chosen to sue" and thus enable him "to use his Fifth

Amendment shield as a sword." *Wehling,* 608 F.2d at 1087.

■ Considering the current state of the law, therefore, a balancing approach appears to be warranted in cases, like this one, where a party to a civil action asserts a Fifth Amendment privilege and refuses to answer deposition questions. *See Serafino v. Hasbro, Inc.,* 82 F.3d 515, 518 (1st Cir.1996); *Wehling,* 608 F.2d at 1088; *United States v. Irish People, Inc.,* 684 F.2d 928, 951–52 (D.C.Cir.1982). The Fifth Circuit adopted this approach in *Wehling v. Columbia Broadcasting Sys.,* where it found "that a civil plaintiff has no absolute right to both his silence and his lawsuit. Neither, however, does the civil defendant have an absolute right to have the action dismissed anytime a plaintiff invokes his constitutional privilege." *Id.* at 1088. Instead, it found that "[w]hen plaintiff's silence is constitutionally guaranteed, dismissal is appropriate only where other, less burdensome, remedies would be an ineffective means of preventing unfairness to defendant." *Id.* The First Circuit adopted a similar approach, in *Serafino v. Hasbro, Inc.,* where it noted that "while a trial court should strive to accommodate a party's Fifth Amendment interests ... it also must ensure that the opposing party is not unduly disadvantaged." *Serafino,* 82 F.3d at 518. It found that "the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it." *Id.* (citing *Black Panther Party v. Smith,* 661 F.2d 1243, 1272 (D.C.Cir. 1981)). Thus, in considering the merits of the defendants's motion in this case, this Court weighed: (1) the validity of the plaintiff's assertion of his Fifth Amendment privilege, (2) the costs to the plaintiff associated with compelling him to answer the deposition questions at issue, (3) the extent to which upholding his assertion would thwart discovery of issues at the heart of plaintiff's lawsuit, and (4) whether and how easily the defendants could obtain the information sought from other sources. All four factors demonstrated that the defendants's motion to compel should be denied.

■ First, plaintiff undoubtedly has a valid Fifth Amendment privilege in the face of the questions at issue. He was asked, for instance, "[t]he night of the incident ... what time did you take the eight ball?" and "[w]hen was the last time, prior to the incident where you got shot, in terms of hours, minutes, and days, that you last took cocaine?" Swann Dep. 70:16–19, 77:23–25, August 3, 2006. Given that drug use is a felony under Virginia law, if plaintiff answered these questions, he would be testifying against his interests. Va.Code Ann. §§ 18.2–250, 54.1– 3446 (2004).

■ Second, given that the plaintiff had not been granted immunity, the cost to the plaintiff associated with compelling him to answer the deposition questions at issue is high; he would be exposing himself to possible criminal prosecution. While the defendants contend that plaintiff's fear of prosecution is unfounded given that "plaintiff and his counsel were given a letter from the Richmond Commonwealth's Attorney, advising that there was no intent to prosecute plaintiff for any potential drug possession charges," this does not suffice in protecting plaintiff from criminal liability such that his Fifth Amendment assertion would be unneeded or unjustified. Defs.'s Mot. Compel ¶ 5. Indeed, as the plaintiff recognizes in his reply brief, "[a]lthough Defendant may think a federal prosecution is unlikely, a valid assertion of the Fifth Amendment privilege requires only the 'existence of a plausible possibili-

ty' that a person will be prosecuted." Pl.'s Opp'n to Defs.'s Mot. Compel 2 n. 1. (citing *United States, Inc. v. Custer Battles, LLC,* 415 F.Supp.2d 628, 633–34 (E.D.Va.2006)). Here, "the Commonwealth's Attorney for the City of Richmond has not given Plaintiff immunity for his testimony; this state prosecutor has only stated that he has 'no intention' of prosecuting the Plaintiff." *Id.* Thus, as discussed, there is a high cost to the plaintiff associated with compelling him to answer the questions at issue here: he would be exposing himself to criminal liability.

■ Third, refusing to compel the plaintiff to answer the deposition questions at issue in this case would not thwart "discovery of issues at the heart of plaintiff's lawsuit." *Wehling,* 608 F.2d at 1086. The defendants contend that "[q]uestions concerning the plaintiff's purchase, sale or consumption of drugs are critical to the defense of this case," and further note that "if plaintiff was buying or selling drugs or intending to do so at the time of the occurrence, his actions were likely in . . . an effort to conceal such activity, rather than the actions of a citizen going about his lawful pursuits." Defs.'s Mot. Compel ¶ 7. The Court, however, disagrees. The central issue in this case is whether or not the defendants were acting reasonably when they shot the plaintiff. At the time of the shooting, the defendant was sitting in the backseat of a vehicle. He did not have control of that vehicle, and he was unarmed. In fact, as plaintiff observes, "all of the [d]efendants admit that they did not see [p]laintiff engaged in any criminal activity—including possession of drugs—before they shot him. Thus, plaintiff's alleged drug use could not have influenced any of the officers' decisions to fire." Pl.'s Opp'n to Defs.'s Mot. Compel 5. Clearly, therefore, whether or not Plaintiff bought or consumed drugs the night of the shoot-

ing is not probative of any central issue in this case.

The defendants argue more persuasively that the plaintiff's drug use is highly relevant in assessing his memory of the incidents in question. This issue, however, is only probative of the credibility of the plaintiff's testimony rather than the liability of the officers. As such, it is a less central issue in the case. More importantly, as discussed below, the defendants can obtain information relevant to this issue from sources other than the plaintiff himself. Overall, therefore, refusing to compel the plaintiff to answer questions concerning his drug use would not thwart discovery of issues at the heart of the defendants's case. At worst, it might make it slightly more difficult for defendants to discover information on more tangential matters.

■ Fourth, the defendants can obtain the information they seek from other sources, which weighs against granting their motion to compel here. *See Sullivan v. City of Augusta,* 406 F.Supp.2d 92, 97 n. 3 (D.Me.2005) ("To balance these concerns, the Court is directed to determine whether there were 'alternative means' to obtain substantially the same information."). Plaintiff notes, and defendants admit, that defendants "already have information concerning drug metabolites detected in [p]laintiff's blood from the hospital records following the shooting." Pl.'s Opp'n to Defs.'s Mot. Compel 5. While defendants complain "that the hospital lab reports contain no information as to the level of drugs, only their presence" and argue that "it is . . . crucial for the defendant to know, and to be able to prove, the level of impairment from which the plaintiff was suffering, information that is simply not available from lab tests," the Court does not find this argument persuasive for several reasons. Defs.'s. Reply Pl.'s Opp'n

 

Mot. Compel 5. Evidence of the mere presence of drugs in the plaintiff's system is enough to assist the defendants in impeaching the plaintiff's memory of the night in the question. Moreover, there is no evidence that the plaintiff himself would be able to state with any particularity the amount of drugs that he consumed. Finally, plaintiff's own answers to certain deposition questions provide a great deal of the information about his drug use sought by the defendants. For instance, when asked, "[t]hey had to give you Methadone because of your addiction to the heroin in your system, to bring you down off of that while you were in the hospital. Isn't that what you understood?" the plaintiff responded in the affirmative. Swann Dep. 75:3–8. When asked, "... on the night of February 3, 2004, did you consume any cocaine?" the defendant answered "No, sir." Swann Dep. 130:19–20. Thus, it is unclear what further benefit could be gained by compelling the defendant to answer additional questions about his drug use on the night in question, given that there are both hospital records and existing answers on the record that provide such information.

Overall, therefore, all four factors weigh against compelling the plaintiff to answer the deposition questions at issue here. Given that he has not been granted immunity, plaintiff has a valid right to assert his Fifth Amendment privilege in response to those questions because they might expose him to criminal liability. Further, the questions concern an issue that is not central to the case. Lastly, the information that the defendants seek is available from other sources, including other portions of the plaintiff's deposition. For these reasons, the defendants's motion to compel plaintiff to answer deposition questions will be denied.

An appropriate order shall issue.

***ORDER***

This matter is before the Court on the defendants's motion to compel plaintiff to answer deposition questions. For the reasons stated in the accompanying memorandum opinion, the Court DENIES the motion to compel plaintiff to answer deposition questions.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.